IN THE MATTER OF THE PETITION OF DANIEL J. GIL-HULY ET ALS. FROM THE DOINGS OF JOHN J. BLAKE, REGISTRAR OF VOTERS, ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

272

Argued April 5th—decided May 5th, 1938.

*Arthur B. O'Keefe, Jr.,* with whom was *Abraham Silver,* and, on the brief, *Arthur B. O'Keefe, Sr.,* for the appellants (defendants).

*John J. Sullivan, Jr.,* for the appellees (plaintiffs).

BROWN, J. Pursuant to stipulation these seven petitions, which were heard together, for the purposes of this appeal have been consolidated into and treated as one application determined by one judgment. These material facts are disclosed by the finding amended by the single correction to which the defendants are entitled. All seven petitioners prior to October 29th, 1937, had been enrolled on the caucus list of the Democratic party of West Haven for periods varying from three to thirty years respectively. They had been more or less active in political affairs as party workers and campaign contributors and were members of the so-called West Haven Democratic Club. Incident to the Democratic primary to nominate town officers held in the fall of 1937, each of them worked for and supported for nomination a candidate other than the one supported by the defendants. The plaintiffs' candidate was defeated in the primary. In the town election the plaintiffs voted for most of the Democratic candidates but made no contribution to the campaign fund, and did not participate actively as party workers, considering in good faith that certain of the Democratic nominees supported by the defendants were unfit for office, and for this reason refrained from actively supporting them. The plaintiffs have been and still are affiliated with the Democratic party only, and in good faith intend to support its principles and candidates.

By written notice signed by the defendants as Democratic registrar and town chairman, respectively, served shortly after the town election, each plaintiff was summoned to appear before the defendants at the West Haven town hall at 8 p.m., October 26th, 1937, and show cause why his name should not be erased from the Democratic enrolment list. The plaintiffs attended this hearing with their attorney. The defendants first called one of the plaintiffs to testify, but upon his counsel's objection he was excused from the stand. Then, after the defendant Blake had declined to allow the plaintiffs' attorney to cross-examine any witness called by the defendants, their attorney advised the plaintiffs, one of whom the defendants then attempted to question, not to answer. The defendants thereupon declared the hearing closed. What testimony was adduced at that hearing does not appear. Under date of October 29th, 1937, each plaintiff received written notice that his name had been stricken from the Democratic primary list "for just cause shown," but the notice did not specify what the "cause" was. The defendants at no time informed the plaintiffs in writing or otherwise of the grounds upon which their action was taken. At the hearing before Judge Pickett the defendants offered no evidence, and wholly failed to show cause why the petitioners' names should not be restored to the Democratic primary list, or that their action was taken on any substantial or credible evidence before them. The name of each petitioner was erased against his will and despite his bona fide intention to continue to affiliate with the Democratic party and to support its principles and candidates.

The judge further concluded that under § 703 of the General Statutes the burden was upon the defendants to show cause for their action; that the mere failure

of each plaintiff to vote in a local election for a nominee of his party regarded by him as unfit for office would not warrant the removal of his name from the primary list of the party of his preference; that removal on such ground would penalize a citizen for acting with due regard to his oath as an elector; and that the plaintiffs were entitled to relief and to have their names restored to the Democratic primary list. At the hearing the defendants claimed that the judge had no power to hear the matter de novo, but could determine only whether the defendants had acted arbitrarily and illegally in striking the plaintiffs' names from the enrolment list; that the plaintiffs had failed to sustain the burden resting upon them to show this; and that therefore the petition should be dismissed. The defendants' chief contention upon appeal is that the judge's inquiry under § 703 must be confined to the question of whether or not they acted arbitrarily or illegally in the proceedings before them, since to construe the statute as permitting a trial de novo of the plaintiffs' factual qualifications for enrolment would render it unconstitutional, as vesting in the judiciary the performance of duties which are purely administrative and nonjudicial, in violation of Article Second of the state Constitution. *Norwalk Street Railway Co.'s Appeal,* 69 Conn. 576, 592, 37 Atl. 1080. This calls for a determination of the character of this statutory proceeding and of the nature of the judge's function thereunder.

Although the title of § 703, "Appeal from decision of registrars," immediately preceded as this section is by those dealing with the erasure of an elector's name from the enrolment list by the registrars and the proceedings incident thereto, suggests that this is a remedy similar in nature to that provided by statutes for reviewing the action of various administrative officials

and boards, due consideration of the kind of right here involved, of the appropriate legal process for asserting it, and the wording of the statute itself, discloses that it is not. This statute was originally adopted as § 8 of Chapter 265 of the Public Acts of 1909, entitled "An Act Concerning Political Primaries and Caucuses," and the marginal title of § 8 as printed in the 1909 Acts reads, "Aggrieved elector may petition to judge of certain courts, where enrollment refused or erased." This title is accurately descriptive of the present provisions of § 703, which provide that the elector aggrieved may petition a judge, setting forth that his name has been unjustly or improperly removed or excluded from the list, as the case may be, and praying for an order directing the registrar to restore or to place his name upon the list, and that if the judge finds him entitled to relief he shall direct the registrar to restore or place the name upon the list, failure to do which shall involve a contempt punishable by fine. The statute's context, and the lack of any provision therein suggestive of a review of the proceedings before the registrar, such, for example, as that of § 618d of the General Statutes, 1937 Supplement, which, in providing for an appeal from action of the liquor control board, specifies that "upon such appeal, the reasons of the commission in refusing the application or in revoking the permit may be received as evidence," all indicate that the title of § 703, which first appeared in § 693 of the 1918 Revision, designating the proceeding thereunder an "appeal," is inaccurate. The remedy thereby provided is rather an original judicial proceeding to afford redress to an elector for the violation of a primary legal right, than one in the nature of an appeal to review the registrar's act. Although a special statutory proceeding, it is similar in nature to that provided by § 294 of the General Statutes for the determination by a

judge of a contested town election, rather than to the more common statutory appeals of the kind provided for by § 618d, supra. Section 703 in effect provides for a special statutory proceeding in the nature of mandamus. In functioning thereunder a judge is exercising a judicial, as distinguished from an administrative or executive power. This power is not dependent, however, upon his being engaged in an appellate review of the proceedings had before the registrar, but is exemplified in his original determination of what is the plaintiff's legal right to enrolment and whether this right has been violated.

Mandamus was recognized as a remedy in this jurisdiction as early as 1787. *Strong's Case*, Kirby 345. It has ever since continued an available remedy in a proper case, and is expressly provided for in § 5912 of the General Statutes. There is authority that the court has jurisdiction by mandamus to compel a political party to enroll an elector who has complied with its regulations and usages. 2 Spelling, Injunctions and Extraordinary Remedies (2d Ed.) p. 1362, § 1570a; *In re Guess*, 38 N. Y. Sup. 91. The law in this State is clear, however, that while mandamus will lie to compel an official to do an act in respect to which he has no discretion, it will not lie to compel the performance of a duty requiring the exercise of his discretion and judgment. *American Casualty Ins. Co.* v. *Fyler*, 60 Conn. 448, 462, 22 Atl. 494; *State ex rel. Metropolitan Life Ins. Co.* v. *Upson*, 79 Conn. 154, 162, 64 Atl. 2. This rule suggests an inquiry as to the nature of the duties committed to registrars under the statutes.

Chapter 40 of the General Statutes, of which § 703 is a part, is entitled "Primaries, Caucuses and Conventions." Its sections are in part as below summarized. Section 695 provides for sessions by the registrars of

voters for the purpose of making and correcting the enrolment lists; § 696 for the notice to be given of these sessions; § 697 that the registrars at these sessions "shall compile separate lists of all qualified electors making application for enrolment according to the declared political preference of such electors," and continue the names of all qualified electors thereon except upon application made for erasure or transfer or the elector's ceasing to be a legal voter; § 698 that at any session "any elector not enrolled on any caucus list may make a written application to the registrar of the political party with which he desires to affiliate, and his name shall be entered by such registrar upon the list of electors of such political party," that the applicant in addition to stating his party preference "shall state that he is not a member of or connected with any political party other than that in which enrolment is being sought by him," and that failure by the registrar "to add any name to any such list on written application" shall render him liable to a penalty of fine and imprisonment; § 699 for the erasure of an elector's name from the list upon written application, or the transfer thereof to any other party list as the elector shall direct; § 700 that whenever the registrar shall be of the opinion that any elector enrolled upon the list of the party which he represents "is not affiliated with, or in good faith a member of, that political party, and does not intend to support its principles or candidates," he shall cite such person to appear before himself and the chairman of his party's town committee "to show cause why his name should not be erased from such enrolment list," and if at the hearing "it shall appear to such registrar and such chairman . . . that it is not the bona fide intention of such person to affiliate with, or that such person is not affiliating with, such political party, and does

not intend to support the principles or candidates of such party, his name may thereupon be erased from the enrolment list of such party"; § 701 that enrolment in, active affiliation with, knowingly being a candidate at the caucus of, or being a candidate on the ticket of another party, shall be prima facie evidence that the elector is not affiliated with the party with which enrolled and does not intend to affiliate therewith, "and, upon reasonable proof of any one of such acts, the name of any such elector may be stricken from such list," and, pursuant to the same procedure prescribed by § 700, "if, after full hearing, such registrar and chairman . . . shall find the name of such elector has been wrongfully or improperly stricken from such list, such name shall be forthwith restored thereto"; § 702 for the procedure at such hearing and that when there are no witnesses to testify against the elector's name being on the list, "the registrar . . . shall make a statement of the facts in his possession, showing why the name of any such elector should be erased," etc.; and § 703 for appeal and the procedure thereon to a judge, who if he find the petitioner "entitled to relief . . . shall issue an order directing such registrar . . . to forthwith restore the name of such elector to the list," subject to penalty for disobedience.

These statutes give rise to an unequivocal right in a qualified elector to be enrolled on the party list of his expressed choice upon his statement that he is not a member of or connected with any other political party. They further give him such right to have his name continued on that list as long as he chooses, unless and until it is no longer his intention to affiliate with such party and to support its principles and candidates. This right is neither dependent upon nor subject to the will of the registrar and town committee chairman. Whether an elector shall be enrolled upon the party

list rests no more within their discretion than does the determination of whether a hunter's license shall be granted under § 3110 of the General Statutes rests in that of the town clerk to whom application is made. The statute prescribes certain definite prerequisites to the granting of the request in each case, and requires compliance upon the official's part when these exist. The further provision in certain of the statutes quoted, that under specified circumstances the registrar and town committee chairman are to determine whether the prerequisites do exist, is not effective to enlarge their administrative duty into one involving an exercise of discretion and judgment. Whether or not, had § 703 not been enacted, the plaintiffs would have been entitled to relief by mandamus, as held in the authorities cited in the preceding paragraph, they are clearly entitled to relief under the statute in this case. This statute, apparently adopted by the Legislature to provide a simpler and more expeditious remedy, so likely upon occasion to be essential to the proper safeguarding of one's party rights, was procedural and within its undoubted power, as illustrated by other enactments discussed in recent decisions of this court. *O'Dea* v. *Amodeo,* 118 Conn. 58, 64, 170 Atl. 486; *Leitzes* v. *F. L. Caulkins Auto Co.,* 123 Conn. 456, 462, 196 Atl. 145. And see 18 R. C. L. 268, § 195; *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263, 26 S. E. 281; *Boggess* v. *Buxton,* 67 W. Va. 679, 683, 69 S. E. 367. Furthermore, what was said by the court in *Marbury* v. *Madison,* 5 U. S. (1 Cranch) 137, 166, is applicable here: "But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, . . . the individual who considers himself injured, has a right to resort to the laws of his country for a remedy." The proceeding under § 703 in the nature of mandamus is a judicial proceed-

ing and the constitutional question argued by the defendants is not involved in the determination of the case.

The defendants' other contention upon this appeal relating to the burden of proof requires but brief comment. Their claim is that the burden rested upon the plaintiffs to show that the defendants acted arbitrarily and illegally in striking their names from the enrolment list. The court's conclusion that the burden was upon the defendants to show cause for their action in effect overruled this claim. As is evident from what we have already said, the defendants' claim was predicated upon a misconception of the nature of this proceeding. No reason appears, however, for invoking in this case other than the usual rule applicable as to the burden of proof in civil actions. While the allegations of the plaintiff's original application are confined to a terse statement in the words of the statute that their names were "unjustly" and "improperly removed," this was put in issue by the defendants' express denial in the first paragraph of their answer and return to the rule to show cause. Upon this issue the burden of proof rested upon the plaintiffs. The judge's conclusion that the burden was upon the defendants to show cause for their action, interpreted in the light of its memorandum of decision, was based upon the same misconception which the defendants had as to the nature of the proceeding and also upon his opinion that the rule issued by him pursuant to § 703 "to show cause why such name . . . should not be restored to the . . . list," imposed this burden upon the defendants. No reason appears for interpreting the statutory provision authorizing a citation "commanding" the defendants "in the name of the state to appear and show cause why" the plaintiffs' names "should not be restored to such list," as imposing any greater duty upon

them than would the issuance of the ordinary rule to show cause incident to a pending action, as, for example, on a motion for a temporary injunction. Under the provisions of § 703 this process is simply utilized as a summary method of procedure, and when served upon the defendant amounts to no more than process in a plenary suit. *Goldstein* v. *United States,* 11 Fed. (2d) 593, 594; *Morehouse* v. *Pacific Hardware & Steel Co.,* 177 Fed. 337, 339, 100 C. C. A. 647. Such a rule was the common-law method of inaugurating mandamus proceedings upon the petition filed. *Lyon* v. *Rice,* 41 Conn. 245, 248; 38 C. J. 908, § 644. As ordinarily used, an order to show cause has simply the effect of notice of a motion. 42 C. J. 489, § 69. The burden of proof thereon rests upon the plaintiff. Op. Cit., 507, § 133.

In mandamus proceedings under § 5912, supra, unless the exigencies of the case require an order to show cause, under our present practice the court will issue in the first instance an alternative writ. Practice Book, p. 346; *Alcorn, State's Attorney, ex rel. Standard Oil Co.* v. *New Britain,* 111 Conn. 214, 217, 149 Atl. 677; *Lyon* v. *Rice,* supra. The alternative writ when issued, serves the same purpose as the complaint in an ordinary action and the return thereto stands in the place of an answer in ordinary pleadings. *Alcorn, State's Attorney, ex rel. Standard Oil Co.* v. *New Britain,* supra, 218; *Williams, State's Attorney,* v. *New Haven,* 68 Conn. 263, 270, 36 Atl. 61. The very nature of the proceeding under § 703 affords additional reason in support of our conclusion that the burden of proof therein is on the plaintiff. From what we have already said it is clear that the answer to the question of whether the prescribed statutory prerequisites existed as to these plaintiffs which entitled them to enrolment, is determinative of this appeal. The facts found by

the judge upon sufficient evidence fully supported his conclusion that they did and so sustained the judgment. That he also arrived at the conclusion that a burden rested upon the defendants to show cause for the action which they took in removing the plaintiffs' names from the list, in no way affected the validity of the former conclusion, which was determinative upon the merits of the real question in issue.

There is no error.

In this opinion the other judges concurred.