## JOHN J. CARROLL
### vs.
## CIVIL SERVICE COMMISSION, CITY OF BRIDGEPORT ET AL.

Superior Court          Fairfield County          File No. 59410

## MEMORANDUM FILED MARCH 12, 1940.

*Otto H. La Macchia,* of Bridgeport, for the Plaintiff.

*Harry Schwartz,* of Bridgeport, for the Defendants.

QUINLAN, J. In December, 1939, a proceeding in the form of an appeal, and also asking injunctive relief, came to Hon. Patrick B. O'Sullivan as a Judge of the Superior Court, seeking an order to show cause why a temporary injunction should not issue. A hearing on this application was postponed and first came before this court, without objection as to procedure, on an application for a temporary injunction.

Notwithstanding that a form of proceeding not provided by the law was pursued, a temporary injunction was issued to preserve the *status quo* and with the thought of preventing any serious damage or injury to the plaintiff pending an opportunity afforded to his counsel to present the questions involved in a proper proceeding.

Within a week mandamus was chosen as the means of testing Sergeant Carroll's position as against the Civil Service Commission. At the same time the old injunction proceeding and so-called appeal were pressed.

Although the city sought a disposition of the injunction first, the court chose to hear the mandamus, so that in the event that proceeding entitled the relator, Carroll, to relief, his rank in the civil service list might possibly be saved by injunctive relief if found to be proper on the proceedings pending.

In pursuance of the practice in such matters the respondents,

the Civil Service Commission, filed a return to the alternative writ of mandamus as on file.

The facts develop that the relator had been a sergeant in the police department of Bridgeport for 21 years prior to July 1, 1939. Notice for examinations for promotion from the rank of sergeant to that of lieutenant in the department fixed July 1, 1939, as the date of the examination. The examination was held on that date. Twenty-six sergeants took the examination and eight passed. Later the police department made request for certification of eligible candidates and four men were certified. The names of the candidates were not used on the examination papers, were not known to the examiners and on the appeal afforded the relator, his name was not revealed. Three and one-half hours were alloted for the examination and during the examination one-half hour additional was granted. Some of the men finished before the expiration of the original time alloted, including at least one of the successful candidates.

The relator failed to complete the examination and did not pass, and, parenthetically, it may be observed that a review of his examination papers discloses a disposition to discuss the early questions in greater detail than the later ones and the last three or four in a most laconic form, which gives support to his claim that time was lacking for him.

The alleged mischief sought to be corrected is chiefly limited to a complaint against three questions, viz., 4, 14 and 18. No fraud, capriciousness or arbitrariness is claimed. Indeed, as I study the cases in the light of all the evidence, it would appear that by the use of *Matter of Fink vs. Finegan,* 270, N. Y. 356, as a skeleton, there was welded a complaint in this case. That case, however, involved an entirely different set of questions— questions of a subjective rather than an objective nature—non-competitive rather than competitive questions.

One cannot within the compass of a week master any subject, and yet the interest engendered by the principles of a case which I know will be constantly before the courts, has claimed a sufficient interest to examine the principles and particularly the procedure of civil service. The general legal principles defining the limits of a court's powers in proceedings of this kind are well known to the legal profession, so that whatever the opinion of a court might be, its conclusions must be within legal bounds, and this is as it should be. A brief statement of some of these legal principles may not be amiss.

In the first place the Civil Service Commission of Bridgeport is an administrative board. As such it is clothed with an exercise of judgment and discretion. As was said in a New York case, the official acts of municipal civil service commissioners are not judicial but are executive, ministerial or administrative, and the court can neither conduct nor supervise examinations held by them. *People ex rel. Caridi vs. Creelman,* 150 App. Div. 746, 749, 135 N. Y. S. 718, 721. *See, also, People ex rel. Buckley vs. Roosevelt,* 19 App. Div. 431, 46 N. Y. S. 517.

No criticism is made of the choice of the proceeding to test relator's right, since the acts of municipal civil service commissioners can only be questioned in a mandamus proceeding and such remedy exists only where some constitutional or statutory provision, *vesting no discretion* in the commissioners has been violated. *People ex rel. Caridi vs. Creelman, supra; Matter of Darling vs. Maguire,* 70 Misc. 597, 129 N. Y. S. 385.

And then we come to the law of our own state, which is clear "that while mandamus will lie to compel an official to do an act in respect to which he has no discretion, it will not lie to compel the performance of a duty requiring the exercise of his discretion and judgment." *In the Matter of Gilhuly's Petition,* 124 Conn. 271, 277.

The questions complained of were competitive questions. Even if the court should agree with relator's counsel's contention that the same grade should be given for answers to questions 15 and 18, the court would be powerless to act in the light of the authorities, and especially where it has not been made to appear by testimony that a change in this marking would affect the general average attained by relator as against that required. So far as questions 4 and 14 are concerned, these corrections would call for an opinion, which is not a cause under the rules for a correction of marking, and it does not appear that a different marking would affect the final result.

No doubt considerable study has been given the merit system in this state, at Bridgeport and in such other places as it has been tried. No doubt either that in principle it has many sustaining virtues. It should not be forgotten, however, that it is a new method being applied to old public servants, and it is no answer to say that it applies equally to every one in the class of sergeants seeking lieutenancy promotions. After all, only eight out of 26 passed. This in itself is a commentary either on the candidates themselves or the questions. As time

goes on ingenuity of counsel will take the precedents hereafter established in this state with those of other states in order to obtain judicial reviews. As a means of avoiding unnecessary litigation, it might be worthy of consideration, until such a time as every one in a given department *has entered* that department by civil service examination, to give *actual* and *real* weights to efficiency and seniority. Efficiency and seniority now receive no value in fact unless the candidate attains a mark of seventy-five per cent in the written test. Contrast this method with the weights given various factors in *Matter of Fink vs. Finegan, supra*. Also, in that case a *general* average of seventy per cent. was the requirement.

For the foregoing reasons the allegations of the return to the alternative writ are found true and judgment may be entered for the defendant, and the injunction is denied.