## STATE EX REL. CHARLES KOCH ET ALS.
*vs.*
## CHASE GOING WOODHOUSE, SECRETARY OF STATE*

Superior Court　　　New Haven County　　　File No. 61525

MEMORANDUM FILED OCTOBER 3, 1941.

*Stephen F. Dunn,* of New Haven, for the Plaintiffs.

*Harry L. Brooks,* Assistant Attorney General, for the De-fendant.

KING, J. The relators bring this action seeking a per-emptory writ of mandamus to compel the defendant, in her official capacity of Secretary of State, to include their names as candidates for membership on the town board of finance, on the ballot to be used in the Town of Madison at the election

*\* See Koch vs. Theis, post, p. 258.*

to be held on the first Monday of October, 1941.

The relators brought their action to the Superior Court by application dated September 30, 1941; a rule to show cause why a peremptory writ of mandamus should not issue was granted on that day, by order of court, and a hearing thereon was set for October 3, 1941. The procedure followed that indicated on page 346 of the Practice Book (1934). *Matter of Gilhuly's Petition,* 124 Conn. 271, 282. To expedite the disposition of the case, counsel agreed that the hearing might be held at two o'clock October 2nd. This was done, and arguments concluded shortly before seven o'clock in the evening.

Counsel for all parties (the defendant being represented by the Assistant Attorney General) cooperated in simplifying the presentation of the matter, and the hearing was held on the defendant's motion to quash, as a question of law, addressed to the complaint as amended, supplemented by two letters from the defendant to the town clerk of Madison, Exhibits C and D (Exhibits A and B having been incorporated in the complaint), respectively dated September 23rd and September 26th, 1941, both of which letters were admitted and considered at the joint request of both counsel.

The defendant, by her letter of September 26th, unequivocally refused to cause the names of any candidates for the office of member of the board of finance to be printed on the ballot to be used in the coming election on October 6th. The relators were nominated by the Republican party, but the refusal applies equally to all candidates of all parties for that office, and is based solely on the claim that no board of finance legally exists in Madison, and that, therefore, there can properly be no candidates for election to a nonexistent office.

The Assistant Attorney General frankly admitted that the defendant's claim is based on the votes purporting to establish a board of finance, which were adopted at a town meeting duly warned and held on August 12, 1941.

It is admitted that Exhibit B is a correct transcript of the minutes of that meeting. The pertinent parts are as follows:

"Moved: That a Board of Finance be established for the Town of Madison in accordance with the provisions of Chapter 28 of the General Statutes of the State of Connecticut and Amendments thereto.

"Amendment to Original Motion made by R. K. Fessenden and seconded by Mr. Shuttleworth.

"Resolved: That if the Town of Madison votes to establish a Board of Finance, the following provisions shall be enforced:

"First: At the first biennial election in 1941 when six members of the Board of Finance are to be elected, not more than three electors from any one political party shall be nominated or elected to the Board of Finance.

"Second: At all subsequent biennial elections, when two members of the Board of Finance are to be elected, not more than one elector from any one political party shall be nominated or elected to the Board of Finance.

"The Amendment was carried by a voice vote and so declared by the Moderator.

"The Moderator called for a Yes and No vote on the Original Motion and declared the Motion carried."

Madison is a town holding biennial elections on the first Monday of October in odd-numbered calendar years. No special act is involved, and the vote to establish a board of finance proceeded under the provisions of chapter 28 of the General Statutes, Revision of 1930, as amended. No provision for minority or bi-partisan representation is contained in the law. Section 281 of the General Statutes, Revision of 1930, is inapplicable to this particular town office.

The defendant claims that the effect of the action at the town meeting was an attempt to create a board of finance of an illegal character (i.e. with bi-partisan representation) and that this so vitiated the proceedings that (Exhibit D) "Your ballots will of course not contain the names of the candidates for the office of member of the Board of Finance, since no Board of Finance has been established in accordance with the authority given by the General Statutes."

It is not necessary to hold, as claimed by the relators, that the defendant has no power, under any circumstances whatsoever, to refuse to print on the ballot the names of candidates for town office as certified by the local party officials and town clerk under the provisions of section 586 of the General Statutes, Revision of 1930. It may be that certain cases might

arise wherein irregularities so gross and palpable would appear that the Secretary of State properly should refuse to print such nominations on the ballot. It is significant, however, that no such power of review is conferred on the Secretary of State by statute, nor has any decision granting such power been referred to the court by counsel or been found in the very limited time available. (Gen. Stat. [1930] §587).

On the other hand, it is clear that the Secretary of State, acting without hearing or opportunity for presentation of evidence, should not summarily pass on doubtful questions of law. Such questions should properly be raised and determined in an appropriate action, such, for instance, as an action for a declaratory judgment, wherein, after adequate notice and an opportunity to be heard, careful consideration and full hearing would be accorded the claims of all parties. The effect of the defendant's action in this case, if the writ prayed for does not issue, was summarily to prevent the voters of Madison from electing anyone to membership in the board of finance, and, inferentially, to adjudicate it a nullity, all this without notice or opportunity to be heard. The possible consequences of this action on the financial affairs of the town are too obvious to require comment.

A somewhat analogous situation exists where a petition is presented to the selectmen for the calling of a special town meeting under the provisions of section 265 of the General Statutes, Revision of 1930. There it is the duty of the selectmen to call the town meeting for any legitimate and proper purpose. *Lyon vs. Rice*, 41 Conn. 245, 249. There the court said, construing the statute: "Cases may be imagined in which the selectmen would be justified, perhaps, in refusing to comply with such a request, but this is not one of them."

A similar ruling was made with reference to the duty of the Attorney General, in *Alling, Attorney General vs. Levitt*, 112 Conn. 586, 592. So, here, the Secretary of State should act unless it clearly appears that the placing on the ballot of the names of candidates for members of the board of finance would be a nullity because of a manifest and fatal invalidity, either apparent on the face of the proceedings certified pursuant to the provisions of section 586 of the General Statutes, Revision of 1930, section 85c of the 1935 Cumulative Supplement thereto, or otherwise ascertainable without resolving any reasonably debatable questions of law, or passing on any

disputed questions of fact. *See* 18 *Am. Jur. Elections* §174.

The problem then presents itself as to whether the action taken at the town meeting was so palpably and obviously inefficacious that it clearly appears that an election to the office of member of the board of finance would be a nullity.

The original motion, had it been passed as originally made without any attempt at requiring bi-partisan representation on the board of finance, would have been legal. This is conceded by all parties. Although termed by the town clerk in his minutes an amendment, there is nothing in the language of the so-called amendment itself which designates it as an amendment. It provided that: "if the Town of Madison votes to establish a Board of Finance, the following provisions shall be enforced: (setting forth the above-quoted bi-partisan provisions)."

Technically these provisions were not to become operative unless the town voted to establish a board of finance. If the vote to establish was illegal (for any reason) then the "provisions" would necessarily fall. They could not be "enforced." It is hardly likely that they could have been intended to destroy that without which they would themselves be inoperative. That a majority of the voters at this meeting wished a bi-partisan board of finance is obvious. That they wanted either such a board or no board at all is far from obvious. The word "enforced" is a peculiar word, and indicates a desire to avoid a direct amendment to the main vote. It is generally held that if a part of a statute is valid and part is invalid for illegality, the legal part will be upheld and the illegal part rejected unless it appears that both parts are so interwoven that it must be considered that if the illegal part is eliminated the legal part is contrary to the intention of the framers of the act. *See Beach vs. Bradstreet,* 85 Conn. 344, 352. Here, upon full hearing, it might well be held that the attempted restrictions, even though invalid, could be disregarded and the main vote upheld. *See Bedard vs. Cunneen,* 111 Conn. 338, 341.

A formal court proceeding, if held, might result in a judicial determination that the action of the voters of Madison did, or did not, result in the establishment of a valid board of finance. It is not necessary to decide that the Secretary of State may not have been correct in her opinion that the action

of the voters in creating a board of finance was inefficacious to establish a valid board. The point is that the question is not so free from doubt as to warrant the summary action taken by the Secretary of State in refusing to print on the ballot the names of any candidates for member of the board of finance.

It is impossible in the few hours available if a decision is to be reached in time to permit the printing of ballots, for the court to do justice to the question presented, and counsel themselves openly expressed their regret at their lack of opportunity for adequate preparation. This in itself is a most compelling argument against the validity of the action of the defendant in summarily passing upon questions as difficult and far-reaching in their possible results, without notice, opportunity for hearing or even adequate warning of the intended action.

As hereinbefore stated, the question of the validity or legal effect of the action of the town meeting is not herein passed upon, except to the extent of holding that it is not so clearly and palpably illegal as to furnish justification or excuse for the defendant's refusal to print on the ballot the names of candidates for membership in the board of finance of the Town of Madison. Appropriate proceedings, perhaps, such as an action for a declaratory judgment, may be brought, if desired, to determine the precise effect of this vote.

For the foregoing reasons a peremptory writ of mandamus may issue commanding this defendant forthwith to supply proper ballots for use in the town election in the Town of Madison to be held on the first Monday of October, 1941, pursuant to law, which said ballots shall contain the names of all candidates for members of the board of finance which have been duly certified to the defendant, and due administration of justice requires that a peremptory writ issue immediately.