STATE EX REL. EDWARD HERMAN v. W. JAMES WALKER ET AL.
(MEMBERS OF THE SCHOOL COMMITTEE OF THE TOWN OF
WINCHESTER)

SUPERIOR COURT      LITCHFIELD COUNTY      FILE NO. 12673

Memorandum filed October 6, 1949.

*Ells, Quinlan* and *Mead,* of Winsted, for the Relator.

*James L. Glynn,* of Winsted, for the Respondents.

MOLLOY, J. The alternative writ of mandamus recites that
on June 7, 1949, the defendants, acting as members of the school
committee of the town of Winchester, voted to and has discon-
tinued an elementary school which had been maintained in that
portion of the town known as Winchester Center and there-
upon provided educational facilities for the children of Win-
chester Center in the schools in the city of Winsted within said
town. The writ further alleges that the town of Winchester
did not legally authorize the discontinuance of the school in
Winchester Center by vote of a town meeting and that the
defendant committeemen have refused and failed to revoke the
order discontinuing said school.

The matter is now before this court upon the respondents' motion to quash the alternative writ. This is equivalent to a demurrer and thus all the allegations of fact in the writ are admitted. *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607. The chief claim of the respondents in support of their motion is that as members of said board of education they are given sole authority to designate the schools which shall be attended by the various children within the town, and therefore the relator has no clear legal right to have the school in question opened, nor are the respondents under a duty to continue said school. They rely mainly upon the provisions of §§ 1501 and 1561 of the General Statutes.

It is provided under § 1501 : "Boards of education shall maintain in their several towns good public elementary and secondary schools and such other educational activities as in their judgment will best serve the interests of the town; . . . shall have charge of the schools of their respective towns; shall have the care and management of buildings . . . shall designate the schools which shall be attended by the various children within their several towns . . . ."

Section 1561 concerns "Discontinuance of small schools. Transportation," and provides: "When the number of pupils in any district for any term of school is so small that, in the judgment of the board of education, the maintenance of a separate school in such district for such term is inexpedient, said board of education may unite the school of such district with the school of an adjoining district or districts . . . ." Provision is then made for transportation of such pupils.

Chapter 146, Public Acts, 1909, is entitled "An Act concerning Town Management of Public Schools," and in § 4 thereof it is provided that boards of education "shall maintain in their several towns good common schools, of the different grades, at such places and times as in their judgment shall best subserve the interests of education, and as shall give all the scholars of the town as nearly equal advantages as may be practicable; . . . they shall designate the schools which shall be attended by the various children within their several towns."

Section 982, Rev. 1918, contained the same language, as did § 974, Rev. 1930, and § 296c of the 1935 Cumulative Supplement. However § 240g of the 1943 Supplement omitted the words "at such places and times," so that the provision reads: "Boards of education shall maintain in their several

towns good public elementary and secondary schools and such other educational activities as in their judgment will best serve the interests of the town. . . ." This is the language of the presently existing statute, § 1501, Rev. 1949.

It is the omission of the words "at such places and times" in § 240g, presently § 1501, which prompts the claim of the relator that such omission took away the power of boards of education to establish or discontinue schools in their several towns. In other words, the relator emphasizes the thought that under the statutory provisions prior to § 240g the school board had the power to establish a school "at such places and times" as in their judgment would best serve the interests of education, whereas now with the omission of the words "at such places and times" they do not have such power; that their power is limited to maintaining the schools once they are established by vote of town meeting.

As to this contention the respondents rely principally upon *State ex rel. Huntington* v. *Huntington School Committee,* 82 Conn. 563, 565, wherein it is stated, "The respective rights of towns and town school commitees, however, with reference to discontinuing or reopening a public school in towns containing but a single school district, were substantially the same before the Act of 1909 took effect as since. The town must meet the cost of maintaining proper schools; the town school committee must see that this is done; and for that purpose is clothed with large discretionary powers. In exercising these it is the agent not of the town, but of the law. *Newton* v. *Hamden,* 79 Conn. 237, 240. Connecticut has for centuries recognized it as her right and duty to provide for the proper education of the young. Town school committees exist as part of her agencies for regulating the due performance of this obligation. If elected by the towns, it is simply because the State has thought this mode of choice expedient. She might have selected them herself. Her concession of a right of election to the town does not recognize or imply that it has a right of control over the committee, when elected . . . .

"It was the former policy of the State to make the management of schools in large measure a neighborhood affair, to be worked out by the creation of numerous small territorial divisions, which were sometimes formed from parts of several contiguous towns. Under this scheme of administration, each local school district had considerable authority over its school com-

mittee . . . . For many years towns have been permitted to consolidate all the districts within their limits, and such a consolidation has now been made compulsory. The statutes under which this change of plan has effected must be interpreted in view of their general purpose, which, in accordance with the economic trend of the times, is to unify and centralize the functions of local school administration. So construed, the defendants were not subject to the control of the town, in regard to the maintenance of the school in question."

It appeared in that case that the school committee of the town of Huntington closed a certain school in what was known as the Lower White Hill District. Subsequently, the town voted that its best interests required that this school should be reopened, and the town school committee be directed to reopen it; and a special committee was appointed to see that it was reopened and to take all proper legal proceedings for that purpose. The town school committee, nevertheless, refused to reopen the school. The position of the school committee was upheld as stated above.

"It has been held that in the maintenance and management of public schools the school committee or board of education is the agent, not of the town but of the law and so, in matters pertaining thereto—including provision for transportation of pupils—is not subject to the control of the town." *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 155, referring to the *State ex rel. Huntington* v. *Huntington School Committee,* supra.

Relator contends that the *Huntington* case is not applicable inasmuch as the statutory power given to school boards to maintain schools contained the words "at such places and times" when that case was decided. That the statute did contain those words at the time of that decision is true, but it hardly affects the position of the respondents, and this because of the strong statements in the *Huntington* and *Groton* cases relative to the position which boards of education occupy in relation to public schools, which position is reiterated in *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 349, wherein it is stated: "A town board of education is an agency of the state in charge of education in the town; to that end it is granted broad powers by the legislature; and it is beyond control by the town or any of its officers in the exercise of those powers . . . ."

This conclusion is hardly a summary or short answer to the relator's contention. We have not before us what prompted the omission of the words "at such places and times", in § 240g or in the present § 1501. But it is significant that none of the cases relied specifically upon these words to sustain the court's state- ments as to the broad powers of town boards of education. The cases reiterate, what is apparently traditional in Connecti- cut, that town school committees "exist as part of her agencies for regulating the due performance of this obligation" (namely the right and duty of the state to provide for the proper educa- tion of the young). *Huntington v. Huntington School Com- mittee,* supra.

Nor should we lose sight of the provision of § 1501, quoted above, that the board of education "shall designate the school which shall be attended by the various children within their . . . towns;" nor should we overlook § 1561, quoted above, giving the board of education the right in its judgment and when expedient to unite one school with another and provide transportation so that children can get to that other school.

It would seem, therefore, to this court that there is little if any merit in the relator's contention based upon the omission of the words "at such places and times" from the present statute, § 1501, defining the "Duties of boards of education."

Relator relies also upon §§ 1499 and 1539 of the General Statutes to sustain its claim that only the town in meeting can make the change which the board of education has made in this case. Section 1499 provides, under the chapter entitled "Town Management," that "The annual town meeting shall be *the annual school district meeting and special meetings shall be called and held in the same manner as provided by law for special town meetings."* Section 1539 is entitled "School busi- ness to be done at town meetings" and provides: "All business relating to public schools in towns which have abolished school districts shall be transacted at town meetings."

Be it said, however, as to the reliance of the relator on these statutes, that when the *Huntington* case was decided, § 2217, Rev. 1902, was in force. It provided, under the title "School business to be done at town meetings," as follows: "All busi- ness relating to public schools in such town shall be transacted at town meetings." Nonetheless we had the strong holding of the *Huntington* case that the board of education had the sole power to do as it did in spite of the vote of the town meeting held subsequently to the action of the school board.

There is serious question also that this court can interfere in this dispute by way of mandamus in the light of the law that: "The law in this State is clear, however, that while mandamus will lie to compel an official to do an act in respect to which he has no discretion, it will not lie to compel the performance of a duty requiring the exercise of his discretion and judgment." *In the Matter of Gilhuly's Petition,* 124 Conn. 271, 277. And again, "With the exercise of discretionary powers courts rarely and only for grave reasons interfere. These grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize the result. Difference in opinion or judgment is never a sufficient ground for interference." *Whitney* v. *New Haven,* 58 Conn. 450, 457.

Be this contention of the respondents sound or unsound, does not the true remedy of the relator and of those who view this situation as he does lie in the changing of the membership of the board of education by town election, when maybe they would elect members who would take a contrary view on this matter to that taken by the present board? That would seem, to this court, to be the true intent of the law in determining the extent and power of town boards of education as it has done. If you are not satisfied with their conduct replace them if you can, but once they are elected by the people in town meetings, their duties and powers are clear.

The motion to quash is granted.