## STATE OF CONNECTICUT *v.* MISCELLANEOUS FIREWORKS (B.J. ALAN COMPANY)
### (AC 31959)

Gruendel, Beach and Robinson, Js.

Argued October 24—officially released December 27, 2011

*Terrence M. O'Neill*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, former attorney general, for the appellant (plaintiff).

*Proloy K. Das*, with whom was *Joseph B. Burns*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, the state of Connecticut, appeals from the judgment of the trial court in favor

of the defendant, Miscellaneous Fireworks (B.J. Alan Company). On appeal, the plaintiff contends that the court erred in (1) requiring that the plaintiff bear the burden of proof[1] and (2) determining that the five gram chlorate and perchlorate limits established in General Statutes § 29-357 applies to each fountain in a multi-fountain pyrotechnic device. In response, the defendant argues that we should not reach the merits of these claims because (1) the state is not authorized to appeal under General Statutes § 29-363, (2) the plaintiff has failed to appeal from a final judgment and (3) the appeal previously was dismissed for failing to comply with a nisi order. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiff's claims. The defendant is an itinerant vendor licensed by the department of consumer protection. On June 27, 2008, the plaintiff seized twelve types of products valued at approximately $147,000 from B.J. Alan Company stores doing business in Connecticut. The plaintiff seized these products pursuant to § 29-357 after the defendant provided documentation to a local fire marshal showing that the

---

[1] In the plaintiff's brief, the plaintiff frames the issue as whether the court erred in holding that the plaintiff failed to meet its burden in proving that the fireworks at issue exceeded the statutory limits set forth in General Statutes §§ 29-356 and 29-357. After reading the arguments set forth in the plaintiff's brief, however, we conclude that the plaintiff did not argue that it met its burden of proof; rather, it contends that the defendant should have borne the burden. "Neither this court nor our Supreme Court is bound by the issues as framed by the parties in their statement of the issues. Rather, our analysis is addressed to the contents of the brief. . . . Moreover, a review of the case history in this state reveals that, in determining what issues are to be addressed on appeal, it has been the practice to examine the contents of the brief rather than rely on the statement of the issues." *Papagorgiou* v. *Anastopoulous*, 29 Conn. App. 142, 148–49, 613 A.2d 853, cert. denied, 224 Conn. 919, 618 A.2d 527 (1992). Thus, on the basis of our reading of the plaintiff's brief, we will address what we construe the plaintiff's argument to be, namely, that the court erred in requiring the plaintiff to bear the burden of proof, when the burden should have instead rested with the defendant.

products at issue exceeded various statutory limitations for gross weight, amounts of chlorate salts and amounts of perchlorate salts.

An in rem hearing with numerous days of testimony was held on the matter. The parties appeared before the court on November 19, 2009, to present their final arguments. At that time, the state agreed to return seven of the twelve types of products, and the defendant conceded that one of the twelve products did not fit within the statutory limitations set forth in § 29-357. The issue presented to the court was whether the state had proven by clear and convincing evidence that the composition of the four remaining products violated § 29-357 so as to constitute a nuisance under General Statutes § 29-362.

In its memorandum of decision issued on January 28, 2010, the court found in favor of the defendant. The court noted that "very limited testing was able to be conducted on the seized items. . . . As a result, insufficient scientifically reliable evidence was produced by the state to prove by clear and convincing evidence that the seized items violated the statutory constraints." The court explained that of the remaining products at issue, three of those products tested at more than five grams of chlorate or perchlorate salts, but less than six grams.[2] On the basis of these test results, the court determined that "the evidence introduced by the state, which showed a less than six grams of chlorate or perchlorate weight, is not scientifically reliable given the small weight difference claimed and the limited sample of items tested. The state has not sustained its burden of proof in establishing these to be items subject to forfeiture."

---

[2] Those three products were the Apache Firedance, which tested at 5.96 grams, Stellar Performance, which tested at 5.58 grams, and CityFest, which tested at 5.32 grams.

In regard to the Flaming Heart product, the court found that although the testing indicated that the product contained 41.1 grams of chlorate and perchlorate, the product did not violate the statutory limits set forth in § 29-357 because it had thirty-two individual fountains among which to divide the chlorate and perchlorate. In reaching this conclusion, the court looked to the definitions set forth in General Statutes § 29-356 in order to interpret § 29-357 and ultimately concluded that § 29-357 is unambiguous. The court found that "[a]s that statute is worded, there are two types of items contemplated. First, the statutory limitations apply to fountains which: (1) are not more than 100 grams of pyrotechnic mixture, and (2) do not contain magnesium, and (3) do not exceed five grams of chlorate/perchlorate salts per item. The final language of this statute then changes to indicate that 'when more than one fountain is mounted on a common base, the totally pyrotechnic composition does not exceed two hundred grams.' General Statutes § 29-357 (a) (3). . . . [I]n order for the statute to be consistent and meaningful, the first portion of the statute must refer to each single fountain or cylindrical tube, and the later portion of the statute applies to those devices where more than one fountain is mounted on a common base. In those instances where there are more than one fountain, the entirety of the item must not exceed the [200] gram limit of pyrotechnic material. However, each individual fountain still maintains the original criteria of not exceeding five grams of chlorate/perchlorate salts and not containing magnesium." On the basis of this determination, the court concluded that when the 41.1 grams of chlorate and perchlorate was divided among the thirty-two individual fountains in the product, the product as a whole did not violate the limitations set forth in § 29-357 (a) (2). The court therefore ordered the return of eleven products seized from the defendant

and forfeiture of the one remaining product. The plaintiff filed this appeal on February 16, 2010. Additional facts will be set forth as necessary.

I

As a preliminary matter, we first turn to the defendant's assertion that this court should not reach the merits of the plaintiff's appeal. The defendant provides three bases for this assertion: (1) the court lacks subject matter jurisdiction because the state is not authorized to appeal under § 29-363, (2) the court lacks subject matter jurisdiction because the plaintiff has failed to appeal from a final judgment and (3) the appeal was previously dismissed for failing to comply with a nisi order. We do not agree.

A

The defendant first asserts that this court lacks subject matter jurisdiction over the plaintiff's appeal because § 29-363 does not authorize the state to file an appeal from a court's ruling ordering the return of seized fireworks. We disagree.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding

its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal,* 297 Conn. 710, 722, 1 A.3d 21 (2010).

Section 29-363 provides in relevant part that "[a]ll such proceedings [concerning the seizure of fireworks or combustibles] shall be proceedings in rem and may be issued and served at any time and shall be conducted as civil actions, and the defendant shall have the same right of appeal." The defendant argues that the plain meaning of § 29-363 is that only the defendant has the right to appeal from the in rem proceeding. We disagree that simply because the statute references only the defendant's right to appeal, this necessarily indicates that the state lacks the same right. The statute does not explicitly provide that the state may not appeal from the trial court's ruling ordering the state to return any seized combustibles. We instead read the language of this provision as indicating that although this is a special in rem proceeding, the defendant shall have the same right of appeal as it would in an ordinary civil action.

Furthermore, because § 29-363 provides that the in rem proceeding "shall be conducted as [a civil action]," the state would have the right to appeal under General Statutes § 52-263, which "confers on a party in a civil action certain rights to appeal." *State* v. *Morrissette,* 265 Conn. 658, 664, 830 A.2d 704 (2003). "It is well established that the subject matter jurisdiction of the Appellate Court . . . is governed by . . . § 52-263, which provides that an aggrieved party may appeal to the court having jurisdiction from the final judgment of the court." (Internal quotation marks omitted.)

*Trumbull* v. *Palmer*, 123 Conn. App. 244, 250, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010). Although § 29-363 only explicitly refers to the defendant's right to appeal, in the present matter, the state is an aggrieved party that has appealed from a final judgment. On the basis of our reading of the relevant statutory provisions, that is sufficient to allow the state to appeal from the court's decision.

## B

The defendant next asserts that this court lacks subject matter jurisdiction because the plaintiff's appeal was not taken from a final judgment. We disagree.

"The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]. . . . As our Supreme Court has explained: To consider the [plaintiff's] claims, we must apply the law governing our appellate jurisdiction, which is statutory. . . . The legislature has enacted General Statutes § 52-263, which limits the right of appeal to those appeals filed by aggrieved parties on issues of law from final judgments. Unless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . Further, we have recognized that limiting appeals to final judgments serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings." (Internal quotation marks omitted.) *J & E Investment Co., LLC* v. *Athan*, 131 Conn. App. 471, 482–83, 27 A.3d 415 (2011).

The following additional facts are relevant to the resolution of the defendant's claim. Judgment was rendered in favor of the defendant on January 28, 2010,

and the plaintiff filed the present appeal on February 16, 2010. The defendant filed a motion for an order, dated November 5, 2010, requesting the court to issue a warrant directing that the plaintiff restore the fireworks seized to the defendant. The court issued such order on December 2, 2010.

The defendant relies on the language of § 29-363, which provides in relevant part that "[i]f judgment is rendered that such fireworks do not constitute a nuisance, the court shall issue a warrant to some proper officer, directing him to restore such fireworks . . . to the place where they were seized, as nearly as possible, or to the person entitled to receive them. . . ." The defendant contends that although the court issued its memorandum of decision on January 28, 2010, there was no final judgment until the court issued a restoration order on December 2, 2010. The plaintiff filed the present appeal on February 16, 2010. Thus, the defendant contends that this appeal was not taken from a final judgment.

We conclude that the court's January 28, 2010 decision was a final judgment from which the plaintiff could properly appeal. The defendant's motion requesting that the products be restored was a postjudgment motion that did not affect the finality of the court's judgment on January 28, 2010. Furthermore, we do not read § 29-363 as providing that only after the court issues a warrant for restoration can there be a final judgment. Rather, we read this provision as providing that the warrant may only be issued after the court has issued a final judgment in the matter. Accordingly, we conclude that the plaintiff's appeal was taken from a final judgment.

C

Last, the defendant asserts that we should not reach the merits of the plaintiff's appeal because the plaintiff's

appeal previously was dismissed for failing to comply with a nisi order. We disagree.

The following additional facts are relevant to the resolution of the defendant's claim. On June 21, 2010, the defendant filed a motion to dismiss the plaintiff's appeal because the plaintiff's brief was due on May 20, 2010, and had not yet been filed at that time. The appellate clerk's office issued a nisi order indicating that the motion to dismiss would be granted if the plaintiff did not submit its brief by July 21, 2010. On July 26, 2010, the plaintiff filed a motion for permission to file a late brief, which the appellate clerk's office granted on August 3, 2010.

The defendant maintains that the July 7, 2010 order dismissed the plaintiff's appeal as of July 21, 2010, when the brief was not filed by the plaintiff. Nisi orders are "orders [that] are conditional and empower the affected party either to avoid an adverse order of the court or to cause an existing adverse order to be set aside or vacated by complying with the specified conditions." *Whalen* v. *Ives*, 37 Conn. App. 7, 18, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995).

The record indicates that the plaintiff's appeal was never formally dismissed on the nisi order. Although the appellate clerk ordered that the appeal would be dismissed if the plaintiff did not submit its brief by July 21, 2010, the appeal was never dismissed after the July 21, 2010 date passed. Furthermore, the appellate clerk's office granted the plaintiff's motion for permission to file a late brief, and the plaintiff filed such brief. The appellate clerk's office has wide discretion to accept a late brief or reinstate an appeal that has been dismissed on a nisi order, and the exercise of that discretion does not implicate this court's subject matter jurisdiction. The plaintiff's appeal then was never formally dismissed.

II

The plaintiff's first contention on appeal is that the court erred in requiring the state to bear the burden of proof for establishing that the seized products constituted a nuisance. The plaintiff maintains that under § 29-362, the defendant bears the burden of proof. We disagree.

We begin by noting the applicable standard of review. "When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007).

The plaintiff contends that the language found in § 29-362 indicates that the person from whom combustibles were seized carries the burden of proving that the combustibles should not be adjudged a nuisance. Section 29-362 provides statutory authority for the state fire marshal to seize fireworks or combustibles that violate §§ 29-356 to 29-366, inclusive. It provides in relevant part that after combustibles have been seized, the Superior Court shall cause to be left at the place of seizure "a summons notifying [those affected] and all others whom it may concern to appear before such court . . . to show cause, if any, why such fireworks should not be adjudged a nuisance. . . . The informing officer or the complainants may appear and prosecute such complaint and, if the court finds the allegations of such complaint to be true and that such fireworks or any of them have been kept in violation of any provision of sections 29-356 to 29-366, inclusive, judgment shall be rendered that such articles are a nuisance, and execution shall issue that the same be destroyed together with the crates, boxes or vessels containing the same. . . ." General Statutes § 29-362. The plaintiff argues that the language in § 29-362 that an individual may appear

before the court "to show cause" why the combustibles at issue are not a nuisance indicates that the burden of proof rests with the individual contesting the seizure of the combustibles.

A show cause order does not necessarily transfer the burden of proof to the party against whom it has been served. In the case of *In the Matter of Gilhuly's Petition*, 124 Conn. 271, 199 A. 436 (1938), the plaintiffs' names had been removed from a political enrollment list by the defendants. Id., 275. A statutory provision provided that the defendants were required to appear and show cause why the names of the electors should not be restored to the list. Id., 281. The court determined that the burden rested with the plaintiff to demonstrate that the defendants arbitrarily and illegally struck their names from the list. Id. The court stated: "No reason appears for interpreting the statutory provision authorizing a citation commanding the defendants in the name of the state to appear and show cause why the plaintiffs' names should not be restored to such list, as imposing any greater duty upon them than would the issuance of the ordinary rule to show cause incident to a pending action, as, for example, on a motion for a temporary injunction. Under the provisions of [General Statutes (1930 Rev.) §] 703 [now § 9-63] this process is simply utilized as a summary method of procedure, and when served upon the defendant amounts to no more than process in a plenary suit. . . . As ordinarily used, an order to show cause has simply the effect of notice of a motion. . . . The burden of proof thereon rests upon the plaintiff." (Citations omitted; internal quotation marks omitted.) Id., 281–82; see also *Thalheim* v. *Greenwich*, 256 Conn. 628, 652 n.18, 775 A.2d 947 (2001) (noting that "an order to show cause has simply the effect of notice of a motion" [internal quotation marks omitted]).

On the basis of our reading of § 29-362, as well as the relevant appellate authority, we conclude that the burden of proof rests with the state, and not with the defendant, in prosecuting a case involving combustibles. An order to show cause can be understood as providing notice of a legal proceeding to a relevant party. In the present case, the defendant was provided with an opportunity to contest the plaintiff's seizure of combustibles and to "show cause" why those combustibles should not be adjudged a nuisance. The order to show cause was the means used to provide the defendant with notice of the claim and with an opportunity to respond in court. The order, however, did not serve to place the burden of proof on the defendant. Accordingly, the court properly determined that the plaintiff bore the burden of proof.

### III

The plaintiff's next contention on appeal is that the court erred in determining that the five gram chlorate and perchlorate limits set forth in § 29-357 (a) (2) apply to each tube in a multitube fountain pyrotechnic device. The plaintiff maintains that the statutory limitations on chlorate and perchlorate salts apply to the entire product as a whole. We disagree.

We already have noted the appropriate standard of review for claims presenting a question of statutory interpretation. See part I A of this opinion. We begin our review, then, with the language of the statute. Section 29-357 (a) provides in relevant part: "[N]o person, firm or corporation shall offer for sale, expose for sale, sell at retail or use or explode or possess with intent to sell, use or explode any fireworks. A person who is sixteen years of age or older may offer for sale, expose for sale, sell at retail, purchase, use or possess with intent to sell or use sparklers or fountains of not more than one hundred grams of pyrotechnic mixture per

item, which are nonexplosive and nonaerial, provided (1) such sparklers and fountains do not contain magnesium . . . (2) such sparklers and fountains containing any chlorate or perchlorate salts do not exceed five grams of composition per item, and (3) when more than one fountain is mounted on a common base, the total pyrotechnic composition does not exceed two hundred grams."

To interpret the language of § 29-357, we must look to the definition of "fountain" set forth in § 29-356. A fountain is defined as "any cardboard or heavy paper cone or cylindrical tube containing pyrotechnic mixture that upon ignition produces a shower of colored sparks or smoke. 'Fountain' includes, but is not limited to, (A) a spike fountain, which provides a spike for insertion into the ground, (B) a base fountain which has a wooden or plastic base for placing on the ground, or (C) a handle fountain which is a handheld device with a wooden or cardboard handle." General Statutes § 29-356 (3).

Applying that definition, we conclude that the language of § 29-357 is clear and unambiguous. The definition of a fountain necessarily indicates that a fountain is one cone or cylindrical tube containing pyrotechnic mixture. The definition does not use limiting language to indicate that to qualify as a fountain, more than one cone or cylindrical tube must be included. Rather, the definition sets forth that a product is a fountain if it has *any* such tube or cone, thereby implying that one tube or cone is all that is necessary. Thus the term "item" as used in § 29-357 refers to the individual fountain. As such, under § 29-357 (a) (1) and (2), each individual fountain, or "item," may not contain magnesium and may not exceed five grams of chlorate and perchlorate salts.

Furthermore, we conclude that § 29-357 (a) (3) is not meant to govern over the individual fountain, but rather,

applies to products that allow for more than one foun-
tain, i.e., more than one cone or cylindrical tube, to be
mounted on a common base. We conclude that the
statute was designed to cover two types of products.
The first is that of the individual fountain, which is
governed by § 29-357 (a) (1) and (2). The statute, how-
ever, under § 29-357 (a) (3) is also intended to apply to
products that have more than one fountain applied to
a common base. In those instances, the entire product
may not exceed more than 200 grams of perchlorate and
chlorate salts. Each individual fountain in the product,
however, still may not exceed the five gram maximum
as mandated in § 29-357 (a) (2). Section 29-357 (a) (3),
then, is meant to apply in situations in which more than
one fountain is used in a product and essentially limits
the number of individual fountains that may be com-
bined on one common base.[3] On the basis of our reading
of the statute, we conclude that the requirement in
§ 29-357 establishing five gram chlorate and perchlorate
limits applies to each tube in a multitube fountain pyro-
technic device and not to the entire product as a whole.

The judgment is affirmed.

In this opinion the other judges concurred.

[3] The plaintiff argues that the legislative intent behind § 29-357 indicates
that statutes concerning fireworks must be read narrowly in order to protect
public safety. We need not consider the legislative intent behind § 29-357,
however, because in this instance the statutory language is clear and unam-
biguous. See *Brown & Brown, Inc.* v. *Blumenthal,* supra, 297 Conn. 722.