## BROWN AND BROWN, INC. *v.* RICHARD BLUMENTHAL, ATTORNEY GENERAL

## RICHARD BLUMENTHAL, ATTORNEY GENERAL *v.* BROWN AND BROWN, INC.
## (SC 18334)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued March 16—officially released August 10, 2010

*Michelle H. Seagull*, with whom were *William M. Rubenstein* and *Kelly A. Burns*, for the appellant (plaintiff in the first case, defendant in the second case).

*Matthew J. Budzik*, assistant attorney general, with whom were *Michael E. Cole*, assistant attorney general, and, on the brief, *Arnold B. Feigin*, assistant attorney general, for the appellee (defendant in the first case, plaintiff in the second case).

*Aaron S. Bayer, Robert M. Langer, Michael Menapace* and *Alison M. Weir* filed a brief for the Connecticut Business and Industry Association, Inc., et al., as amici curiae.

*James Sicilian, Jason S. Weathers, Ben Robbins, Martin J. Newhouse* and *Jo Ann Shotwell Kaplan* filed a brief for the New England Legal Foundation as amicus curiae.

*Opinion*

ROGERS, C. J. The principal issue in this appeal[1] is the scope of the confidentiality protections afforded by General Statutes § 35-42,[2] a provision that authorizes

---

[1] Brown and Brown, Inc., appealed from the judgment of the trial court to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] General Statutes § 35-42 provides: "(a) Whenever the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, has reason to believe that any person has violated any of the provisions of this chapter, he may, prior to instituting any action or proceeding against such person, issue in writing and cause to be served upon any person, by subpoena duces tecum, a demand requiring such person to submit to him documentary material relevant to the scope of the alleged violation.

"(b) Such demand shall (1) state the nature of the alleged violation, and (2) describe the class or classes of documentary material to be reproduced thereunder with such definiteness and certainty as to be accurately identified, and (3) prescribe a date which would allow a reasonable time to assemble such documents for compliance.

"(c) All documents furnished to the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, shall be held in the custody of the Attorney General, or his designee, shall not be available to the public, and shall be returned to the person at the termination of the attorney general's investigation or final determination of any action or proceeding commenced thereunder.

"(d) No such demand shall require the submission of any documentary material, the contents of which would be privileged, or precluded from disclosure if demanded in a grand jury investigation.

"(e) The Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may during the course of an investigation of any violations of the provisions of this chapter by any person (1) issue in writing and cause to be served upon any person, by subpoena, a demand that such person appear before him and give testimony as to any matters relevant to the scope of the alleged violations. Such appearance shall be under oath and a written transcript made of the same, a copy of which shall be furnished to said person appearing, and shall not be available for public disclosure; and (2) issue written interrogatories prescribing a return date which would allow a reasonable time to respond, which responses shall be under oath and shall not be available for public disclosure.

"(f) In the event any person shall fail to comply with the provisions of this section, (1) the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may apply to the superior court

the attorney general to demand, prior to the institution of any action or proceeding, discovery from any person[3] whom he has reason to believe has violated any portion of the Connecticut Antitrust Act (antitrust act), General Statutes §§ 35-24 through 35-49.[4] The plaintiff,[5] Brown

for the judicial district of Hartford for compliance, which court may, upon notice to such person, issue an order requiring such compliance, which shall be served upon such person; (2) the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may also apply to the superior court for the judicial district of Hartford for an order, which court may, after notice to such person and hearing thereon, issue an order requiring the payment of civil penalties to the state in an amount not to exceed five hundred dollars.

"(g) The Attorney General shall cooperate with officials of the federal government and the several states, including but not limited to the sharing and disclosure of information and evidence obtained under the purview of this chapter.

"(h) Service of subpoenas ad testificandum, subpoenas duces tecum, notices of deposition, and written interrogatories, as provided herein, may be made by: (1) Personal service or service at the usual place of abode; or (2) by registered or certified mail, return receipt requested, a duly executed copy thereof addressed to the person to be served at his principal place of business in this state, or, if said person has no principal place of business in this state, to his principal office, or to his residence."

Although § 35-42 was amended in 2009; see Public Acts 2009, No. 09-68; those amendments have no bearing on the merits of the present appeal. Accordingly, all references to § 35-42 are to the current 2009 revision of the statute. See footnote 9 of this opinion.

[3] " 'Person' means any individual, proprietorship, corporation, limited liability company, firm, partnership, incorporated and unincorporated association, or any other legal or commercial entity . . . ." General Statutes § 35-25 (b).

[4] Section 35-42 sanctions "a form of pretrial discovery. It allows the attorney general in his investigative role to discover and procure evidence, not to prove a pending charge or complaint." *In re Application of Ajello* v. *Moffie*, 179 Conn. 324, 326, 426 A.2d 295 (1979). The statute "authorize[s] the attorney general to conduct investigations and seek discovery orders from the trial court when violations of the [antitrust] act merely are suspected and without the institution of an action alleging a violation of the act." *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 3 n.2, 826 A.2d 1088 (2003); see *Mobil Oil Corp.* v. *Killian*, 30 Conn. Sup. 87, 95, 301 A.2d 562 (1973) (allowing that civil antitrust investigations such as that authorized by § 35-42 were akin to " 'fishing expeditions,' " but explaining that they nevertheless were constitutionally permissible); see also *United States* v. *Morton Salt Co.*, 338 U.S. 632, 642, 70 S. Ct. 357, 94 L. Ed. 401 (1950).

[5] This appeal challenges the judgment rendered following the consolidation of two separately filed matters in the trial court. Although Brown and

and Brown, Inc., appeals from the summary judgment of the trial court, rendered in favor of the defendant, Richard Blumenthal, in his official capacity as the state attorney general.[6] The plaintiff claims that the trial court improperly construed the confidentiality provisions of § 35-42. We agree and, accordingly, reverse the judgment of the trial court.[7]

The following undisputed facts and procedural history are relevant. The plaintiff is an independent insurance intermediary that provides a variety of insurance and reinsurance products and services to corporations, public entities, institutions, trade professionals, associations and individual clients. On December 19, 2005, as part of an investigation of possible antitrust violations in the insurance industry, the defendant, pursuant to the authority of § 35-42 (a) and (e) (2), respectively,

Brown, Inc., is the plaintiff only in the first matter for declaratory and injunctive relief, and is the defendant in the second matter brought by the attorney general to enforce compliance with a subpoena; see General Statutes § 35-42 (f) (1); for convenience we refer to Brown and Brown, Inc., as the plaintiff and to the attorney general as the defendant.

[6] On May 6, 2009, the Connecticut Business and Industry Association, Inc., the Insurance Association of Connecticut, the National Association of Mutual Insurance Companies, the American Insurance Association and the Property Casualty Insurers Association of America, collectively, filed an application to appear as amicus curiae and requested permission to file a brief in this matter and to participate in oral argument. Additionally, on May 11, 2009, the New England Legal Foundation filed an application to appear as amicus curiae and requested permission to file a brief. On June 3, 2009, this court granted both applications, but ordered that no oral argument would be permitted.

[7] The plaintiff also claims that the trial court, as to the § 35-42 (f) (1) enforcement proceedings, improperly ordered the plaintiff to comply unconditionally with the defendant's subpoena and, additionally, improperly granted the defendant's motion to delete or expunge an answer and special defenses filed by the plaintiff, because those proceedings are civil actions to which the rules of practice apply. In light of our resolution of the plaintiff's first claim, we need not discuss the second claim in any detail. In short, because the trial court's order of compliance was premised on its misinterpretation of the confidentiality provisions of § 35-42, it necessarily was improper and must be reversed. In light of our resolution of the plaintiff's second claim, we need not reach its third claim, because resolution of that claim in the plaintiff's favor would afford it no practical relief.

issued a subpoena duces tecum and interrogatories to the plaintiff. According to the plaintiff, the defendant requested materials and information that contained trade secrets and other valuable commercial and financial information.[8]

Pursuant to § 35-42 (c), documents furnished to the defendant under § 35-42 (a) "shall not be available to the public . . . ." Pursuant to § 35-42 (e) (2), interrogatory responses "shall not be available for public disclosure." Section 35-42 (g) directs, however, that "[t]he Attorney General shall cooperate with officials of the federal government and the several states, including but not limited to the sharing and disclosure of information and evidence obtained under the purview of this chapter."[9]

In the course of the parties' discussions regarding the plaintiff's compliance with the subpoena, it became apparent that they disagreed in their interpretation of the foregoing provisions. The parties had agreed that the plaintiff would produce responsive material in stages, and, on June 2, 2006, the plaintiff produced the first stage, comprising some 12,000 documents. There-

---

[8] Counsel for the plaintiff attested, in an affidavit submitted to the trial court, that the defendant had requested production of, inter alia, "detailed internal financial records, customer lists, business strategies, internal negotiation strategies, and internal self-evaluations of its business activities and procedures."

[9] Section 35-42 (e) (1), which authorizes the defendant to subpoena oral testimony, similarly provides that transcripts of such testimony "shall not be available for public disclosure . . . ." Moreover, § 35-42 recently was amended by Public Acts 2009, No. 09-68, to address the subject of documentary material or other information *voluntarily* furnished to the defendant in connection with an antitrust investigation. The amendment uses language identical to the existing provisions covering material or information gained by subpoena and, therefore, it appears that the legislature intends to afford all of the different categories of material and information the same level of confidentiality. Specifically, pursuant to subsection (c) (2) of the amended statute, voluntarily produced material or information, as well as the identity of its provider, "shall be held in the custody of the Attorney General, or the Attorney General's designee, and *shall not be available to the public.*" (Emphasis added.) General Statutes (Sup. 2010) § 35-42 (c) (2).

after, the parties attempted to reach an agreement regarding confidentiality, but ultimately were unsuccessful. Instead of producing the second stage of material, which was due on August 31, 2006, the plaintiff, on August 29, 2006, filed an action for declaratory relief, requesting that the trial court determine the scope of the confidentiality protection afforded by § 35-42.[10] Two days later, the defendant, pursuant to § 35-42 (f), filed with the trial court an application for an order requiring the plaintiff to comply with the interrogatories and subpoena duces tecum. On October 12, 2006, the trial court granted the parties' joint motion to consolidate the two matters.

On October 30, 2006, the plaintiff filed a motion for summary judgment in the declaratory judgment action, seeking a declaration from the trial court endorsing the plaintiff's interpretation of § 35-42.[11] Specifically, the plaintiff sought a judgment declaring that the defendant could not disclose any documents or information received pursuant to § 35-42 "to any person outside the [defendant's] office except to the extent such documents and information are (1) actually entered into evidence on the public record in a court proceeding

---

[10] In additional counts of its complaint, the plaintiff also sought temporary and permanent injunctive relief barring the defendant from disclosing the responsive material and information in violation of the provisions of § 35-42. The complaint also included counts, pleaded in the alternative, seeking: a writ of mandamus requiring the defendant to protect the confidentiality of the responsive material and information by not disclosing it in violation of § 35-42; an order quashing the subpoena or modifying it to provide safeguards to prevent the disclosure of the plaintiff's trade secrets and other confidential information; and a protective order preventing the defendant from disclosing those trade secrets and other confidential information. The trial court viewed each count of the plaintiff's complaint as raising the same legal issue, namely, the proper construction of § 35-42. Because we agree with that characterization, we need not consider separately the claims raised by the plaintiff.

[11] The trial court held the defendant's application for an order of compliance in abeyance pending the resolution of the plaintiff's motion for summary judgment.

after notice and opportunity for the [plaintiff] to be heard regarding whether such disclosure may be made; or (2) provided to an official of another state or the federal government . . . where such official will maintain the same degree of confidentiality provided by § 35-42 (c) and (e) . . . ." The plaintiff claimed further that § 35-42 did not permit the defendant to disclose subpoenaed information and documents to third parties during interviews or depositions he conducted to advance his antitrust investigation.

In opposing the plaintiff's motion for summary judgment, the defendant argued that he could use and share subpoenaed information to the extent necessary to advance his investigation and to prepare cases for prosecution, which could require sharing documents with persons outside of his office. Also, according to the defendant, the plaintiff's claimed right to notice and an opportunity to be heard before its documents could be used in a court proceeding to which it was not a party would be too burdensome. Finally, the defendant argued, there was no language in § 35-42 indicating that a confidentiality requirement should be imposed on sharing information with officials of other jurisdictions.

In a May 1, 2007 memorandum of decision, the trial court denied the plaintiff's motion for summary judgment.[12] The court first interpreted the phrases "shall

[12] As an initial matter, the trial court rejected the plaintiff's claim that the defendant was precluded by the doctrine of collateral estoppel from arguing that the meaning of § 35-42 differed from the interpretation of the statute reached in *Mobil Oil Corp.* v. *Killian*, 30 Conn. Sup. 87, 301 A.2d 562 (1973), because his office was a party to that action and did not challenge the court's holding by way of appeal. According to the trial court, the statutory interpretation in *Mobil Oil Corp.* was dicta and, therefore, the meaning of § 35-42 was not necessarily determined for purposes of preclusion. The trial court noted additionally that the holding of *Mobil Oil Corp.* was overruled legislatively by the amendment of § 35-42. See Public Acts 1973, No. 73-668. Although we agree with the trial court that the doctrine of collateral estoppel does not apply to bar the defendant from relitigating the meaning of § 35-42, we do so on different reasoning. Specifically, we recently held that, for important policy reasons, nonmutual collateral estoppel cannot be employed

not be available to the public" and "shall not be available for public disclosure," as used in § 35-42 (c) and (e) (2), respectively, in order to decide whether § 35-42 prohibits the disclosure of information to any person outside of the defendant's office. The court concluded that the legislature, by using those phrases, likely intended to establish an exception to the general rule contained in the Freedom of Information Act, General Statutes § 1-200 et seq., that documents received or retained by a public agency are public records available to the public for inspection and copying.[13] According to the trial court, because the statute did not use the words "anyone" or "any person," it could not be read to preclude a limited disclosure to outside individuals when such disclosure is necessary to advance the purpose of the statute, namely, the investigation of potential antitrust violations and preparation for court proceedings. This limited disclosure, the court explained, would not violate the statutory proscription against disclosure to the "public," because that term contemplates the community at large as a group and does not necessarily apply to each of its individual members. The trial court concluded, therefore, that subsections (c) and (e) (2) of § 35-42 do not create an absolute bar to the disclosure of subpoenaed material and information during an investigation by the defendant.

The trial court further rejected the plaintiff's assertion that it is entitled to notice and an opportunity to be heard in the event that any information obtained pursuant to § 35-42 is offered during court proceedings to which it is not a party. Finally, the trial court con-

---

offensively against a government entity as it may in an action between private parties. See *Sikorsky Aircraft Corp.* v. *Commissioner of Revenue Services*, 297 Conn. 540, 546, 1 A.3d 1033 (2010); see also *United States* v. *Mendoza*, 464 U.S. 154, 159–60, 104 S. Ct. 568, 78 L. Ed. 2d 379 (1984).

[13] See General Statutes § 1-210 (a).

cluded that § 35-42 does not require officials of other jurisdictions who receive such information pursuant to subsection (g) to conform to the public nondisclosure provisions of subsections (c) and (e) (2).

The plaintiff appealed from the denial of its motion for summary judgment. We dismissed that appeal for lack of a final judgment. See *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 650, 954 A.2d 816 (2008). Thereafter, the defendant moved for summary judgment on the plaintiff's complaint and reclaimed the application for an order of compliance for a decision by the trial court; see footnote 11 of this opinion; and the plaintiff filed a second motion for summary judgment on its complaint. On February 24, 2009, the trial court, as to the plaintiff's complaint, denied the plaintiff's second motion for summary judgment, granted the defendant's motion for summary judgment, and rendered judgment in favor of the defendant, adopting as its reasoning the previous memorandum of decision on the plaintiff's first motion for summary judgment. The trial court also granted the defendant's reclaimed application for an order of compliance, reasoning that it involved the same issue of statutory interpretation that had been resolved in favor of the defendant. This appeal followed.

The plaintiff claims first that the trial court improperly construed the proscriptions in § 35-42 (c) and (e) (2) against "disclos[ing]" subpoenaed material and information to the "public" to refer only to disclosure to the general public via the provisions of the Freedom of Information Act that require access to public records, thus permitting disclosure to specific members of the public, including actual and potential competitors and clients of a subpoena target, if that disclosure furthers an antitrust investigation. According to the plaintiff, the confidentiality protection of § 35-42 applies even after subpoenaed documents are filed in an enforcement action, thereby requiring that the owner of the docu-

ments be given notice and an opportunity to be heard when the defendant intends to use the documents in court so that the owner can seek a court order protecting them from disclosure. Finally, the plaintiff argues, because the confidentiality requirements of § 35-42 remain in place even when documents are shared with other governmental officials, the defendant must obtain agreement from such officials to adhere to those requirements before sharing any subpoenaed documents or information with them. We agree with the plaintiff.

We begin with the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC,* 294 Conn. 311, 318, 984 A.2d 676 (2009).

The plaintiff's claim also presents a question of statutory interpretation, such that the trial court's conclusions are legal ones subject to plenary review. *Wiseman* v. *Armstrong,* 295 Conn. 94, 99, 989 A.2d 1027 (2010).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) Id., 99–100.

We begin by considering the text of § 35-42. As to each type of subpoenaed material or information, the statute prohibits disclosure to the "public." Because the word "public" is not statutorily defined, the trial court looked to various dictionary definitions stating that "public" means "[t]he community or the people as a whole"; "[a] group of people sharing a common interest"; American Heritage Dictionary of the English Language (3d Ed. 1992); or "[t]he whole body politic, or the aggregate of the citizens of a state, nation, or municipality. The inhabitants of a state, county, or community. In one sense, everybody, and accordingly the

body of the people at large; the community at large . . . the people. In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many of them as contradistinguishes them from a few . . . ." Black's Law Dictionary (6th Ed. 1991). Although the trial court correctly concluded from the foregoing definitions that the term "public" generally contemplates a group of people collectively, rather than as individuals, we believe that that distinction, read within the context of the remainder of § 35-42, only creates an ambiguity. In particular, if subpoenaed material and information cannot be shared with society at large, but nevertheless may be shared with any or all of its individual members, the statutory bar against disclosure essentially becomes meaningless and unworkable. Accordingly, we must look further to construe the legislature's intent.

Consideration of the additional protections afforded by § 35-42, and of other statutes with similar focus, lends support to the notion that the legislature, although it granted broad investigatory powers to the defendant to pursue antitrust violators, also intended to afford counterbalancing protections to investigatory targets in recognition of the potential sensitivity of internal business information and the fact that the defendant's investigation need not be founded on any specified level of suspicion and, ultimately, might result in no allegations of wrongdoing. See footnote 4 of this opinion. First, § 35-42 (c), aside from requiring that subpoenaed documents not be available for public disclosure, also requires that such documents be "held in the custody of the [defendant] or his designee," a phrase that connotes a duty of safekeeping. Moreover, § 35-42 (c) requires that subpoenaed documents "be returned to the person [providing them] at the termination of the [defendant's] investigation or final determination of any action or proceeding commenced thereunder" in appar-

ent recognition that the documents are the personal property of the investigatory target. Additionally, the legislature's appreciation for the value of trade secrets to their owners and the need for their protection is evidenced by its passage of the Connecticut Uniform Trade Secrets Act (trade secrets act), General Statutes § 35-50 et seq., which permits actions for both injunctive relief and damages, including punitive damages and attorney's fees, for misappropriation of trade secrets.[14] See General Statutes §§ 35-52, 35-53 and 35-54. Notably, the trade secrets act defines "misappropriation" as including "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . *acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . .*" (Emphasis added.) General Statutes § 35-51 (b) (2) (B) (ii). The trade secrets act provides further that the "[p]erson[s]" who may be liable for misappropriation include "government[s] . . . [and] governmental subdivision[s] or agenc[ies] . . . ." General Statutes § 35-51 (c). Presumably, the legislature was aware of the provisions of § 35-42 when it enacted the trade secrets act in 1983. Public Acts 1983, No. 83-344. The legislature's attachment of such severe penalties to the unauthorized disclosure of trade secrets by government agencies having a duty to limit their use would be wholly inconsistent with a simultaneous intent that § 35-42 permits such disclosure in the attorney general's discre-

---

[14] " '[T]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." General Statutes § 35-51 (d).

tion. See *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 398, 978 A.2d 49 (2009) (legislature "is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law" [internal quotation marks omitted]).

We disagree with the trial court's reasoning that the prohibitions in § 35-42 against "public" disclosure merely were meant to create an exception to the general laws requiring open access to public records, because "the word 'public' is a key term used in our Freedom of Information Act." According to the trial court, if the legislature had intended the provisions to mean otherwise, it would have used phraseology barring disclosure of subpoenaed material or information to " 'any person,' " or " 'anyone,' " as it did in various other statutes intended to impose strict confidentiality requirements. The trial court's conclusion, however, is contradicted by the language of the Freedom of Information Act itself, which provides that "every person"—and not "the public"—shall have the right to inspect and copy public records. General Statutes § 1-210 (a). In any event, as the trial court recognized in ruling on a motion for articulation filed by the plaintiff, § 35-42, which was enacted in 1971; see Public Acts 1971, No. 608; predates the Freedom of Information Act, which was not in existence until 1975. See Public Acts 1975, No. 75-342. Consequently, the legislature, when crafting § 35-42, could not have been referencing the Freedom of Information Act by using the word "public."

The public records statute that preceded the Freedom of Information Act, and which was in effect when § 35-42 was enacted, similarly did not refer to the beneficiary of its disclosure requirements as "the public," but stated instead that "*every resident* of the state shall have the right to inspect or copy such [public] records . . . ." (Emphasis added.) General Statutes (Sup. 1969) § 1-19.

Moreover, the predecessor statute expressly exempted from the definition of public records "trade secrets and commercial or financial information obtained from the public"; General Statutes (Sup. 1969) § 1-19; which would have rendered a restatement of the exemption for such items in § 35-42 entirely superfluous. We cannot countenance a reading of a statute that would render it superfluous. *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 471, 944 A.2d 315 (2008). Finally, our research reveals that, when the legislature wishes to create an exception to public records requirements, it does so clearly by explicitly referencing the statute generally authorizing access,[15] and not by alluding to it

[15] See, e.g., General Statutes § 2-46a (a) (materials obtained or prepared in conjunction with impeachment proceedings "shall not be subject to the provisions of section 1-210 until such [impeachment] committee transmits its final report to the House of Representatives"); General Statutes § 2-53g (b) (investigatory materials of "Legislative Program Review and Investigations Committee or its staff shall not be subject to the provisions of section 1-210 until the investigation is completed"); General Statutes § 4-37f (9) (requiring written agreement that, when state agencies maintain books and records of supporting foundations, "any such books and records maintained by the state agency shall not be deemed to be public records and shall not be subject to disclosure pursuant to the provisions of section 1-210"); General Statutes § 4-61 (c) (certain records produced during arbitration of claims against state on highway and public works contracts "shall not be subject to disclosure under section 1-210 and shall not be disclosed by the agency to any person or agency that is not a party to the arbitration"); General Statutes § 7-479h ("meetings, minutes and records of an interlocal risk management agency pertaining to claims shall not be subject to sections 1-201, 1-202, 1-205, 1-206, 1-210, 1-211, 1-213 to 1-217, inclusive, 1-225 to 1-232, inclusive, 1-240, 1-241 and 19a-342"); General Statutes § 8-30h (income statements of affordable housing tenants "shall be confidential and shall not be deemed public records for the purposes of the Freedom of Information Act, as defined in section 1-200"); General Statutes § 8-360 ("[n]othing in sections 1-200, 1-205, 1-206, 1-210 to 1-213, inclusive, 1-225 to 1-232, inclusive, 1-240 and 19a-342 shall be construed to require a public agency, as defined in section 1-200, to disclose any information indicating the location of a shelter or transitional housing for victims of domestic violence"); General Statutes § 10-10a (b) (department of education's "system database of student information shall not be considered a public record for the purposes of section 1-210"); General Statutes § 10-151c (records of teacher performance and evaluation maintained by boards of education "shall not be deemed to be public records and shall not be subject to the provisions of section 1-210"); General Statutes § 10a-154a (performance and evaluation records of faculty

with ambiguous "key term[s]."[16]

Although the legislative history of § 35-42 does not address the particular issue at hand, the circumstances surrounding the subsequent amendments to the statute, or the lack thereof, shed further light on the legislature's intent regarding the nondisclosure provisions. The antitrust act intentionally was patterned after federal antitrust law. *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 72, 793 A.2d 1048 (2002); *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 15, 664 A.2d 719 (1995). Section 35-42, when it originally passed in 1971, was "modeled, with some changes, after the federal Antitrust Civil Process Act of 1962, set forth in 15 U.S.C. §§ 1311 [through] 1314 (1970)." *Mobil Oil Corp.*

or professional staff members "shall not be deemed . . . public record[s] and shall not be subject to disclosure under the provisions of section 1-210" absent written consent); General Statutes § 10-409 (b) ("[n]otwithstanding the provisions of . . . section 1-210, the Connecticut Commission on Culture and Tourism may withhold from disclosure to the public information relating to the location of archaeological sites under consideration for listing by the commission"); General Statutes § 11-25 (b) (1) ("[n]otwithstanding section 1-210, records maintained by libraries that can be used to identify any library user, or link any user to a library transaction, regardless of format, shall be kept confidential"); General Statutes § 12-63c (b) ("information related to actual rental and rental-related income and operating expenses and not already a matter of public record which is submitted or made available to the [tax] assessor shall not be subject to the provisions of section 1-210"); General Statutes § 12-810 (c) (new lottery games and procedures "shall not be deemed public records, as defined in section 1-200, and shall not be available to the public under the provisions of section 1-210"); General Statutes § 17b-452 (c) (records of investigations of abuse of elderly persons "shall not be deemed public records nor be subject to the provisions of section 1-210"); General Statutes § 19a-12b (f) (department of health professional assistance oversight committee records "shall not be deemed public records and shall not be subject to the provisions of section 1-210"); General Statutes § 19a-429 (records pertaining to investigations of youth camps "shall not be subject to the provisions of section 1-210"); General Statutes § 21-100 (e) (statements of dealers of precious metals regarding weekly transactions "shall not be deemed public records for the purposes of the Freedom of Information Act, as defined in section 1-200").

[16] Although the defendant suggested at oral argument that the legislature's method of explicit cross-referencing differed prior to the enactment of the Freedom of Information Act, he has not provided any authority supporting that proposition.

v. *Killian*, 30 Conn. Sup. 87, 91, 301 A.2d 562 (1973).[17] The federal statute, at that time, had strict nondisclosure provisions, requiring documentary material produced in response to an investigative demand to be held by a designated "antitrust document custodian," and providing that "no material so produced shall be available for examination, without the consent of the person who produced such material, by any individual other than a duly authorized officer, member, or employee of the Department of Justice." Antitrust Civil Process Act, Pub. L. No. 87-664, §§ 2 and 4 (c), 76 Stat. 548, 550 (1962). The federal statute thereafter was amended to create an exception permitting disclosure of material in connection with the taking of oral testimony, "[n]otwithstanding" the foregoing nondisclosure requirement. 15 U.S.C. § 1313 (c) (2) (2006). Section 35-42, however, was not amended to mirror its federal counterpart. We glean from this circumstance that our legislature intended that materials submitted in a Connecticut antitrust investigation *should not* be available for such use.

In addition, § 35-42, when it was originally enacted, did not include subsection (e) (2), allowing the defendant to demand responses to written interrogatories, or subsection (g), authorizing the defendant to share

---

[17] As a general matter, we interpret the antitrust act with reference to the federal courts' interpretation of federal antitrust law. *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 72–73; *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 235 Conn. 15 n.17; see also General Statutes § 35-44b. Nevertheless, we may disregard federal precedent when the statutes at issue differ materially in their terms. See *State* v. *Marsh & McLennan Cos.*, supra, 286 Conn. 470 (Connecticut courts need not incorporate federal antitrust law into state antitrust jurisprudence where state statute and federal counterpart differ significantly); *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811, 873 A.2d 965 (2005) (§ 35-44b inapplicable in case that concerned state antitrust statute having no federal counterpart); *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 15–16 ("we follow federal precedent when we interpret the [antitrust] act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently").

information with other government officials. See Public Acts 1971, No. 608; see also footnote 2 of this opinion. Thus, under the original wording, the defendant was authorized only to subpoena documents, which "shall not be available to the public"; Public Acts 1971, No. 608, § 19 (c), now codified at General Statutes § 35-42 (c); and to compel oral testimony, with the transcripts thereof not to "be available for public disclosure . . . ." Public Acts 1971, No. 608, § 19 (e), now codified at General Statutes § 35-42 (e) (1). Shortly after the enactment of § 35-42, a trial court had the opportunity to interpret the meaning of the phrase "shall not be available to the public," as used in subsection (c). In *Mobil Oil Corp.* v. *Killian,* supra, 30 Conn. Sup. 90–91, 96, the plaintiff brought an action to quash a subpoena issued by the defendant pursuant to § 35-42 (c), arguing, inter alia, that the defendant intended to use the subpoenaed material improperly by disclosing it to other states' attorneys general. The trial court agreed that such a use was not permitted by § 35-42, concluding that "[u]nder our statute, while the matter is in the civil investigative stage, no one is entitled to examine the documents or records except the attorney general and his designee. Insofar as the phrase 'shall not be available to the public' requires interpretation, it includes everyone other than the attorney general and his designee. None of the information obtained by this subpoena is available for export to any other person during the civil investigative stage." Id., 96. The trial court issued an order in accordance with this interpretation.

The legislature responded to the trial court's decision in *Mobil Oil Corp.* by amending § 35-42 to add subsection (g), thereby permitting the defendant to share information and evidence gathered in antitrust investigations with officials in other states and the federal government. Public Acts 1973, No. 73-668, § 4. At the same time, the legislature added subsection (e) (2) to § 35-

42, authorizing the defendant to demand responses to interrogatories, subject to the same confidentiality caveat that already existed in subsection (c) and which the trial court had interpreted in *Mobil Oil Corp.*, namely, that the responses not be disclosed to the public. Public Acts 1973, No. 73-668, § 3.

We agree with the plaintiff that these amendments strongly evidence the legislature's agreement with the trial court's interpretation of § 35-42 in *Mobil Oil Corp.* If, as the defendant insists, the prohibition against disclosure was merely an exception to the general laws governing access to public records, the legislature simply would have reworded the existing subsections (c) and (e) (1) of § 35-42, and phrased the new subsection (e) (2), to say so clearly and to refute the holding of *Mobil Oil Corp.* Instead, the legislature retained, and reused, the language that it was aware had been interpreted broadly, and added only one exception to the court's general holding that all disclosure of subpoenaed materials was barred, to anyone outside the attorney general's office.[18] Cf. *Mattox* v. *Federal Trade Commission*, 752 F.2d 116, 120 (5th Cir. 1985) (concluding that legislature's general bar of public access to information obtained in investigations pursuant to Hart-Scott-Rodino Act of 1976, 15 U.S.C. § 18a [h], coupled with exception allowing disclosure to Congress and congressional committees, was "evidence that the statute's prohibition of disclosure was otherwise meant to be universal"); *Lieberman* v. *Federal Trade Commission*, 771 F.2d 32, 38 (2d Cir. 1985) (same).

---

[18] We acknowledge that the trial court's holding in *Mobil Oil Corp.*, to the extent that it went beyond the issue presented, namely, whether the defendant could share subpoenaed documents with other government officials, was dicta. We see no reason, however, why the legislature, if it perceived any peripheral aspect of the court's decision to be a misinterpretation of § 35-42, would have declined to correct a misinterpretation as part of the amendment responding to the direct holding of the case.

It is well settled that "[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have upon any one of them . . . as well as the interpretation which the courts have placed upon one of its legislative enactments and of the effect that its own nonaction, thereafter may have." (Citation omitted; internal quotation marks omitted.) *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 812, 873 A.2d 965 (2005). In short, the legislature's failure to act following a court's interpretation of a statute suggests strongly that the legislature agrees with that interpretation. Id. We conclude that, to the extent the legislature declined to alter the holding of *Mobil Oil Corp.* when it passed responsive legislation, it agreed with that holding. Accordingly, we construe § 35-42 as barring disclosure of material and information gathered in an antitrust investigation pursuant to § 35-42 to all persons outside of the attorney general's office,[19] with the exception of officials of other states and the federal government.

On the basis of our interpretation of § 35-42, we agree with the plaintiff's contention that the defendant may not disclose the materials and information obtained from the plaintiff to persons outside of the defendant's office in connection with taking oral testimony in pursuance of an antitrust investigation. We also agree that the defendant, if he chooses to share such materials and information with other government officials pursuant to § 35-42 (g), first must obtain agreement from those officials that they will abide by the same confidentiality

---

[19] Pursuant to § 35-42, investigatory materials may be held or solicited by either the attorney general or his designees. We read the latter term to include experts retained by the attorney general or others authorized to act on his behalf in conducting antitrust investigations. Cf. *Tesoro Petroleum Corp.* v. *State*, 42 P.3d 531, 535–39 (Alaska 2002) (outside counsel was both " 'authorized employee' " and attorney general's " '[d]esignee' " for purpose of statute authorizing civil investigative demands for suspected antitrust violations). At oral argument, the plaintiff agreed that the term "designee" encompassed outside counsel and expert witnesses.

restrictions to which the defendant is subject. Finally, if the defendant decides to institute an antitrust action and needs to file investigatory materials in conjunction with the action, he should do so in accordance with the lodging procedures set forth in Practice Book §§ 7-4B[20] and 7-4C.[21]

[20] Practice Book § 7-4B provides: "(a) As used in this section, 'record' means any affidavit, document, or other material.

"(b) A party filing a motion requesting that a record be filed under seal or that its disclosure be limited shall lodge the record with the court pursuant to Section 7-4C when the motion is filed, unless the judicial authority, for good cause shown, orders that the record need not be lodged. The motion must be accompanied by an appropriate memorandum of law to justify the sealing or limited disclosure.

"(c) If necessary to prevent disclosure, the motion, any objection thereto, and any supporting records must be filed in a public redacted version and lodged in a nonredacted version conditionally under seal.

"(d) If the judicial authority denies the motion to seal or to limit disclosure, the clerk shall either (1) return the lodged record to the submitting party and shall not place it in the court file or (2) upon written request of the submitting party retain the record as a lodged record so that in the event the submitting party appeals the denial of the motion, the lodged record can be part of the record on appeal of the final judgment in the case. In the latter event or if the judicial authority grants the motion, the clerk shall follow the procedure set forth in Section 7-4C (e). If the lodged record is retained pursuant to (2) above, the clerk shall return it to the submitting party or destroy it upon the expiration of the appeal period if no appeal has been filed."

[21] Practice Book § 7-4C provides: "(a) A 'lodged' record is a record that is temporarily placed or deposited with the court but not filed.

"(b) A party who moves to file a record under seal or to limit its disclosure shall put the record in a manila envelope or other appropriate container, seal the envelope or container, and lodge it with the court.

"(c) The party submitting the lodged record must affix to the envelope or container a cover sheet that contains the case caption and docket number, the words 'Conditionally Under Seal,' the name of the party submitting the record and a statement that the enclosed record is subject to a motion to file the record under seal.

"(d) Upon receipt of a record lodged under this section, the clerk shall note on the affixed cover sheet the date of its receipt and shall retain but not file the record unless the court orders it filed.

"(e) If the judicial authority grants the motion to seal the record or to limit its disclosure, the clerk shall prominently place on the envelope or container the words 'SEALED BY ORDER OF THE COURT ON (DATE)' or 'DISCLOSURE LIMITED BY ORDER OF THE COURT ON (DATE),' as appropriate, and shall affix to the envelope or container a copy of the court's order and the public redacted version of the motion. If the judicial authority

As to the bar against sharing subpoenaed documents with third parties, who potentially may be direct competitors of the owner of the documents, we disagree with the defendant that such a restriction will cripple his ability to investigate possible antitrust violations. As the plaintiff points out, nongovernmental parties routinely are able to bring actions pursuant to the private enforcement provisions of the antitrust act; General Statutes §§ 35-33 and 35-34; without having the ability to conduct any pretrial discovery whatsoever. Additionally, although federal officials are authorized by the Antitrust Civil Process Act to use subpoenaed materials in third party depositions; see 15 U.S.C. § 1313 (c) (2); it does not appear that such use is a vital investigatory tool.[22] Finally, we strongly reject the defendant's contention that "there can be little actual prejudice in disclosing subpoenaed materials to competitors as necessary to pursue an antitrust investigation [because] [a]ny competitor to whom disclosure is made will very likely already have some knowledge of the document as a result of [its] participation in the contract or conspiracy being investigated." It bears emphasizing that, when the defendant is conducting discovery pursuant to § 35-42, investigatory targets have not been, and in

denies the motion and the submitting party requests in writing that the record be retained as a lodged record, the clerk shall prominently place on the envelope or container the words 'MOTION DENIED, RETAIN AS LODGED RECORD' and shall affix to the envelope or container a copy of the court's order and the public redacted version of the motion."

[22] A manual used internally by the Antitrust Division of the United States Department of Justice provides that, "[a]lthough it is occasionally useful to use [civil investigatory demand] materials in a deposition of a third party where the third party has already seen the materials, or is at least generally aware of their substance, it is very rarely necessary to use [those] materials in connection with a deposition of a third party that is unfamiliar with the contents of those materials." Dept. of Justice, Antitrust Division Manual (4th Ed. 2008) c. III, pp. III-68 through III-69. Additionally, the assistant attorney general in the present case acknowledged, when he attempted to negotiate with the plaintiff the terms to govern its compliance with the defendant's subpoena, that disclosure of subpoenaed material when deposing third party witnesses is necessary only "[i]n very rare instances . . . ."

some cases may never be, charged with any wrongdoing. Accordingly, it is wholly inappropriate to presume their guilt to justify further expansion of the defendant's already considerable statutorily granted investigatory powers.

In regard to sharing information with officials of other jurisdictions, it is clear that the legislature, by enacting § 35-42 (g), intended that the defendant should have and exercise this power. Nevertheless, reading subsection (g) in conjunction with subsections (c) and (e) of § 35-42, it is also clear that that power necessarily is conditional, so as to not render impotent the confidentiality provisions of the latter two subsections. When construing a statute, we read it "as a whole . . . so as to reconcile all parts as far as possible." (Internal quotation marks omitted.) *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 157, 602 A.2d 988 (1992). If officials of other jurisdictions were free to use and disclose material and information obtained under § 35-42 in ways that the defendant may not, the bars against disclosure in subsections (c) and (e) would be rendered meaningless. Again, the defendant's insistence that it would be unduly burdensome to impose conditions regarding disclosure on other officials is belied by the fact that many other states have similar prerequisites for interjurisdictional sharing of documents and information acquired in prelitigation antitrust investigations. See, e.g., Cal. Govt. Code § 11181 (g) (Deering Sup. 2009) (department head may divulge information obtained in antitrust investigation to other government officials "if the Attorney General, prosecuting attorney, or agency to which the information or evidence is divulged agrees to maintain the confidentiality of the information received to the extent required by [California's statutes governing antitrust investigations]"); Mass. Ann. Laws c. 93, § 8 (LexisNexis 2005) (allowing disclosure to other officials provided "that prior to any

such disclosure the attorney general shall obtain a written agreement from such officials to abide by the restrictions of [the Massachusetts statute governing investigative demands] and any orders entered [thereunder]").

Finally, as to filing in court proceedings subpoenaed material and information that was obtained during an investigation conducted prior to the institution of an action, we disagree with the defendant that continued adherence to the nondisclosure requirements of § 35-42 will lead inevitably to a "secret antitrust docket." When such materials are filed or entered into evidence in connection with a court proceeding, the confidentiality protection afforded by the statute must be balanced against the countervailing presumption that documents submitted to a court in furtherance of its adjudicatory function shall be available to the public. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 34–35, 46, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009); see also Practice Book § 11-20A (a). Accordingly, when the defendant intends to file materials obtained pursuant to § 35-42, or to include the substance of such materials within a pleading,[23] he should utilize the lodging procedures set forth in Practice Book

---

[23] Although the defendant has expressed concern over an interpretation of § 35-42 that would constrain his ability to reference subpoenaed materials in a complaint, we question whether that concern is warranted. Connecticut employs fact pleading, which requires that a "pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . ." Practice Book § 10-1. In accordance with this provision, "[a]ttorneys in Connecticut are not required, at the time a pleading is filed, to substantiate the allegations contained therein with evidentiary support." *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 617, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007). To the contrary, inclusion of evidence in a complaint is a violation of our rules of practice. *Fort Trumbull Conservancy, LLC* v. *Alves*, 286 Conn. 264, 277 n.13, 943 A.2d 420 (2008).

§§ 7-4B and 7-4C. Specifically, to comply with the confidentiality mandates set forth in § 35-42, he should lodge the materials with the trial court. The party from whom the material was obtained then will have an opportunity to file a motion, accompanied by an appropriate memorandum of law, seeking to file the materials under seal or to limit their disclosure.[24] The trial court must then determine, in accordance with Practice Book § 11-20A (c),[25] whether the materials contain any trade secrets or other sensitive information, and whether the need to maintain their confidentiality overrides the public's interest in viewing them.[26] See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 35 (presumption of public access to court documents may be outweighed by countervailing considerations).

---

[24] If the materials are obtained from a nonparty, the nonparty must be given notice that the materials have been lodged with the court so that it has an opportunity to intervene and contest their disclosure to the extent that it believes is warranted. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 5 n.1 (nonparty individuals permitted to intervene for limited purpose of contesting disclosure of documents).

[25] Practice Book § 11-20A (c) provides: "Upon written motion of any party, or upon its own motion, the judicial authority may order that files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding be sealed or their disclosure limited only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. An agreement of the parties to seal or limit the disclosure of documents on file with the court or filed in connection with a court proceeding shall not constitute a sufficient basis for the issuance of such an order."

[26] We recognize that our rules of practice presume that the party lodging records with the trial court necessarily is the same party who wishes to have the records sealed or their disclosure limited. As a practical matter, however, we also recognize that the lodging party, at times, will be seeking disclosure of records that earlier were deemed confidential. In such circumstances, requiring lodging of the records in a manner consistent with the procedures set forth in Practice Book §§ 7-4B and 7-4C will ensure that the records remain confidential until the court can enter an order pursuant to Practice Book § 11-20A (c).

The judgment is reversed and the case is remanded to the trial court with direction to render summary judgment in favor of the plaintiff and to deny the defendant's application for an order of compliance.

In this opinion the other justices concurred.