******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DISCIPLINARY COUNSEL *v.* JOHN J. EVANS
(AC 36575)

Sheldon, Mullins and Schaller, Js.

*Argued March 10—officially released August 18, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Mintz, J.)

*John J. Evans*, self-represented, the appellant
(defendant).

*Beth L. Baldwin*, assistant disciplinary counsel, with
whom was *Suzanne Sutton*, first assistant disciplinary
counsel, for the appellee (plaintiff).

*Opinion*

MULLINS, J. In this presentment[1] filed by the plaintiff, disciplinary counsel, alleging misconduct by the defendant, John J. Evans, a suspended attorney acting as a self-represented party, the defendant appeals following the judgment of the trial court denying his motion for reinstatement to the practice of law. On appeal,[2] the defendant claims that the trial court improperly (1) denied his motions to vacate an agreement that he had entered into with disciplinary counsel to resolve the presentment, (2) ordered, pursuant to the parties' agreement, that he disclose unredacted documents for an audit of his IOLTA account,[3] (3) suspended him from the practice of law, and (4) denied his motion for reinstatement to the practice of law.[4] We affirm the judgment of the court.

The following facts are relevant to this appeal. Rita Kruk, a former client of the defendant, initiated grievance proceedings against him by filing a complaint on March 17, 2009. She alleged that the defendant had refused to disburse funds to her and to provide her with a proper accounting of a recovery that he had received on her behalf through his prior representation of her.

After a finding of probable cause by a local grievance panel, the reviewing committee of the Statewide Grievance Committee held an evidentiary hearing and thereafter directed disciplinary counsel to file a presentment against the defendant in the Superior Court. The presentment charged the defendant with violating, inter alia, rule 1.15 (b) of the Rules of Professional Conduct, by refusing to disburse funds to which Kruk was entitled and by refusing to provide Kruk's new counsel with a proper accounting of the fees and expenses arising from the prior representation.[5]

On September 20, 2011, the defendant filed an application for inactive status with the court on the ground that he was incapacitated from practicing law "by reason of mental infirmity or illness." Afterward, the parties reached an understanding whereby the defendant would go on inactive status for a period of approximately one month, enter a substance abuse program and then be permitted to practice law under court supervision pursuant to conditions that would be set forth at a hearing on his application for reinstatement. Thus, pursuant to that understanding, on November 4, 2011, the court ordered that the defendant go on inactive status and appointed a trustee "to secure [the defendant's] client's fund account and take the steps as are necessary to protect the interest of [defendant's] clients and to secure the [defendant's] IOLTA account."

On December 1, 2011, after completing a rehabilitation program, the defendant filed a motion for "reinstate[ment] . . . from inactive status under such

conditions as the court may impose." On December 16, 2011, the parties executed an agreement for disposition of the presentment (agreement)[6] pursuant to which the defendant acknowledged, inter alia, "that there [was] sufficient evidence to prove by clear and convincing evidence that he failed to provide [Kruk] a proper accounting of his fees and expenses" in violation of rule 1.15 (e) of the Rules of Professional Conduct.[7] The defendant also consented to the imposition of conditions upon his return to the practice of law, including "submit[ting] his IOLTA account [records] for monthly audit by the Statewide Grievance Committee, with the first audit being for the month of December, 2011," and "fully cooperat[ing] with the Statewide Grievance Committee and . . . promptly answer[ing] all questions and provid[ing] all necessary documents."[8]

The agreement specified that the documents for "[t]he December, 2011 audit shall be submitted to the Statewide Grievance Committee no later than February 1, 2012, and shall be due on the first of each month for each subsequent monthly audit." The agreement further indicated that it "contemplate[d] the imposition of discipline" to resolve the presentment, and provided that "whether [the defendant] is reprimanded or suspended, depend[ed] on his compliance with the [agreement's] conditions . . . ." As it relates to the defendant's noncompliance, the agreement provided that "[i]f [the defendant] fail[ed] to comply with one or more of the conditions . . . the court shall order that [he] be suspended from the practice of law for six months, and [the defendant] must be reinstated by motion to the court, subject to such conditions as the court might impose at the time of reinstatement."

On the same day that the parties executed the agreement, the court held a hearing at which disciplinary counsel read the terms of the agreement into the record. The court then canvassed the defendant concerning the agreement. During the canvass, the defendant acknowledged that he understood the agreement, entered into the agreement voluntarily, found the agreement to be fair and equitable, and was satisfied with his legal representation.

Afterward, pursuant to the agreement, the court ordered the defendant suspended for a period of six months, the imposition of which was deferred for one year, during which time the defendant would be permitted to practice law pursuant to the agreement's conditions. In that order, the court confirmed that it would dispose of the presentment by "impos[ing] a reprimand for misconduct" if the defendant complied with the agreement's conditions, but "[i]f the [defendant] fail[ed] to comply with one or more of the conditions . . . the court shall order the [defendant] suspended from the practice of law for six months, and [he] must be reinstated by motion to the court, subject to such conditions

as the court might impose at the time of reinstatement."

On January 31, 2012, the defendant moved to vacate the agreement and the order enforcing its terms on the ground that he had been "financially pressured into entering into [the agreement]." On February 10, 2012, disciplinary counsel filed a motion to suspend the defendant from practicing law for six months on the ground that he had failed "to provide his IOLTA account [records] and the necessary documentation for the period of December, 2011, for audit with the Statewide Grievance Committee."

On March 16, 2012, the court held a hearing on both motions. The court denied the defendant's motion to vacate and, in response to disciplinary counsel's motion, ordered that the defendant "submit his IOLTA account [records] for the months of December, 2011, and January, 2012, to the Statewide Grievance Committee."[9] At the hearing, the defendant expressed concern that providing documents pertaining to his IOLTA account would require him to disclose confidential client information. To address the defendant's concern, the court ordered that the defendant be "awarded protection under Practice Book § 2-27 (e)" and, accordingly, that the Statewide Grievance Committee "not . . . disclose any of [the defendant's] client information to anyone but the [o]ffice of the [c]hief [d]isciplinary [c]ounsel and the [c]ourt for the purpose of the audit."[10]

Despite the protections afforded by the court's March 16, 2012 orders, the defendant maintained that disclosing the documents would reveal privileged information, and he refused to provide his IOLTA account documents for audit. In response, on April 25, 2012, the court ordered that the defendant provide notice to his clients of the terms of the March 16, 2012 orders to give them an opportunity to object. In response to that order, the defendant filed affidavits from several clients in which they averred that they did not consent to the disclosure of the documents. To address the concerns expressed in those affidavits, the court ordered in June, 2012, that, prior to the audit, the defendant submit unredacted copies of the documents to the court, *Hon. Frank H. D'Andrea, Jr.*, judge trial referee, for an in camera review, the "sole purpose of [which was] to . . . match up the unredacted client names so they can be redacted appropriately and submitted to the Statewide Grievance Committee to perform an audit on [the defendant]." At that time, the defendant offered no objection to the use of that procedure.

On August 16, 2012, the defendant filed a second motion to vacate the agreement. In this motion, the defendant argued that the agreement was nullified by mutual mistake and violated Practice Book § 2-60, which he claimed mandated his reinstatement after he successfully completed the treatment program. The court denied that motion.

On November 16, 2012, disciplinary counsel filed a motion "to extend the period of probation and conditions" because it still had "not received the documents from the court to perform the audit." During a hearing on this motion, disciplinary counsel informed the court that the defendant personally had redacted the documents before submitting them to the court, despite the court's previous order that they be submitted for an in camera review. According to disciplinary counsel, the defendant's redactions made an audit impossible because the defendant had "left absolutely no information on the documents in order for an audit to be performed."

On December 11, 2012, the court issued an order that provided as follows: "[The defendant] is ordered to provide the Statewide Grievance Committee with unredacted copies of all documents previously provided for the audit on or before December 20, 2012. The only parts of the documents to remain redacted are the client names. Anywhere a client's name appears it may be redacted and replaced with John Doe or Jane Doe as reviewed and approved by Judge D'Andrea. All payees, amounts, dates, and check numbers are not to be redacted." The defendant refused to provide unredacted documents for audit.[11] As a result, on January 11, 2013, the court ordered that the defendant be suspended from the practice of law for a period of six months.

On January 30, 2013, the defendant filed an appeal with this court in which he challenged the imposition of his suspension, the denial of his motion to vacate the agreement, and the order that the defendant disclose his IOLTA account information. The defendant failed, however, to provide a preliminary statement of the issues for appeal, as required by Practice Book § 63-4 (a) (1). As a result, on March 1, 2013, this court issued a nisi order in which the defendant was provided until March 11, 2013, to file a preliminary statement of issues or his appeal would be dismissed.[12] The defendant failed to file a preliminary statement of issues by that date. Accordingly, this court dismissed that appeal on March 12, 2013. Afterward, on April 4, 2013, the defendant tardily moved to open and vacate the dismissal of that appeal.[13] We declined to vacate the dismissal.

Approximately six months later, in the trial court, by a motion dated November 26, 2013, the defendant moved for reinstatement to the practice of law on the ground that the six month period of suspension had ended. On January 28, 2014, the court denied that motion on the basis that it would "not entertain a motion for reinstatement until an audit [was] performed pursuant to [the] prior order dated March 16, 2012 . . . for the period of November 4, 2011, to the date of suspension January 11, 2013." This appeal followed.

Before we address the defendant's specific claims on

appeal, we set forth the overarching principles articulating the relationship between the Superior Court and members of the bar. "The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 553–54, 663 A.2d 317 (1995). "Attorney disciplinary proceedings are for the purpose of preserving the courts of justice from the official ministration of persons unfit to practi[c]e in them." *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 771–72, 725 A.2d 948 (1999).

"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Citation omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 554–55.

"The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court. . . . Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. . . . [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. . . . In proceedings such as those at issue, therefore, the attorney's relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court

will not be set aside upon review." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238–39, 558 A.2d 986 (1989).

"[T]he clearly erroneous standard . . . is the preferable standard of review in attorney grievance appeals. . . . The clearly erroneous standard of review provides that [a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Zelotes*, 152 Conn. App. 380, 386, 98 A.3d 852, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014).

I

## ISSUES SUBJECT OF PREVIOUS APPEAL

At the outset, many of the defendant's claims are reprises of claims that he could have and should have brought in his prior appeal of the court's January 11, 2013 judgment. Specifically, the defendant claims that the trial court improperly denied his motions to vacate the agreement, ordered him to disclose unredacted documents for an audit of his IOLTA account, and suspended him from the practice of law. Because the defendant has waived those claims by failing to pursue them in a prior appeal, we decline to review them in this appeal.

As we previously noted, on January 11, 2013, the court ordered the defendant suspended for a period of six months. On January 30, 2013, the defendant timely appealed his suspension to this court, but failed to file a preliminary statement of issues.[14] On March 1, 2013, this court issued a nisi order informing the defendant that his appeal would be dismissed unless he filed a preliminary statement of issues on or before March 11, 2013. The defendant failed to file a preliminary statement of the issues by that date and, accordingly, we dismissed that appeal.

"It is well established that when a party brings a subsequent appeal, it cannot raise questions which were or could have been answered in its former appeals. . . . Failure to raise an issue in an initial appeal to this court constitutes a waiver of the right to bring the claim." (Citation omitted.) *Detar* v. *Coast Venture XXVX, Inc.*, 91 Conn. App. 263, 266, 880 A.2d 180 (2005); see also *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 612–14, 879 A.2d 897 (refusing to consider merits of claim pertaining to denial of motion to vacate where appellant previously unsuccessfully attempted to file late appeal of denial from same motion), cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006). "It is axiomatic, however, that this principle applies only

when the issue that a party seeks to raise in a subsequent appeal was one that the party actually litigated *prior to the initial appeal* such that the issue *could have been raised in the initial appeal*." (Emphasis in original.) *American Diamond Exchange, Inc.* v. *Alpert*, 302 Conn. 494, 508, 28 A.3d 976 (2011).

Here, in the hearings before the trial court, the defendant actually litigated the issues he now seeks to raise in this appeal, namely, the issues regarding the imposition of his suspension, the denial of his motion to vacate his agreement with disciplinary counsel, and the court's order to disclose his clients' IOLTA account information. He filed a timely appeal regarding those issues on January 30, 2013, and, therefore, could have and should have raised those issues in that appeal. He did not. Rather, he failed to comply with the court's nisi order and that appeal was dismissed. Thus, by failing to pursue the January 30, 2013 appeal, in which he could have pursued the claims he is now raising in this appeal, the defendant has waived those claims. Having waived those claims, the defendant cannot obtain review of those claims simply by filing this appeal from a subsequent judgment and raising the same exact claims he had an opportunity to raise in a prior appeal.[15] Consequently, we do not consider the merits of the claims pertaining to the validity of the agreement, the orders requiring that the defendant disclose documents for audit, and his suspension from the practice of law.

## II

## MOTION FOR REINSTATEMENT

The defendant claims that the court improperly denied his motion for reinstatement because (1) the denial of the motion "required [him] to disclose protected information" and (2) "when the court denied the motion to reinstate, the defendant had already been under suspension for more than one year . . . ." We are not persuaded.

## A

The defendant claims that the court's denial of his motion for reinstatement improperly "required [that he] disclose protected [client] information." The defendant argues that providing unredacted documents for audit "could lead to the discovery of confidential information." According to the defendant, his "clients have simply refused to consent to disclosure of their information" and he "did not have the right to agree to disclose [the documents] . . . without client consent." Because the defendant already waived any challenge to the orders requiring disclosure of documents for an audit; see part I of this opinion; we refuse to entertain the merits of his contention regarding whether the disclosure of those documents would violate any attorney-client privilege. Upon review of the merits of the court's denial of the defendant's motion for reinstatement,

however, we conclude that the court did not err in making reinstatement contingent on an audit of certain client records.

The commentary to rule 1.15 of the Rules of Professional Conduct provides that "[a] lawyer should hold property of others with the care required of a professional fiduciary." Subsection (b) of rule 1.15 requires a lawyer to keep "[c]omplete records of such account funds . . . ." Practice Book § 2-27 (c) complements that rule by requiring that the records of a client trust account be available for audit by the Statewide Grievance Committee or disciplinary counsel "[u]pon the filing of a grievance complaint or a finding of probable cause . . . ."

In this case, a grievance complaint was filed against the defendant, and a local grievance panel found probable cause that the defendant had violated rule 1.15 (e) of the Rules of Professional Conduct. Additionally, in the agreement, the defendant admitted that there was sufficient evidence to prove that he had violated rule 1.15 (e) of the Rules of Professional Conduct, and he agreed to provide the documents necessary for an IOLTA account audit. Consequently, our rules of practice and the parties' agreement provided ample authority for the court to order that the defendant comply with an IOLTA account audit prior to his reinstatement. Indeed, the court premised its denial of the defendant's motion for reinstatement on the fact that the defendant continually had disobeyed its December 16, 2011 order to disclose the required documents for an audit.

The defendant claims that the court improperly conditioned his reinstatement on the disclosure of what he describes as "protected information." It is true that, under rule 1.6 (a) of the Rules of Professional Conduct, "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent . . . ." This rule advances the "fundamental principle in the client-lawyer relationship . . . that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter." (Internal quotation marks omitted.) *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 702, 669 A.2d 1202 (1996), quoting Rules of Professional Conduct 1.6, commentary. Nonetheless, "[t]he Rules of Professional Conduct provide that an attorney may divulge such materials in certain circumstances." *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 764, 48 A.3d 16 (2012). Indeed, under rule 1.6 (c) (4) of the Rules of Professional Conduct, "[a] lawyer may reveal such information to the extent the lawyer reasonably believes necessary to . . . [c]omply with . . . a court order."

Furthermore, the commentary to rule 1.6 of the Rules

of Professional Conduct provides guidance to attorneys who are ordered to disclose records that they consider to be confidential. If clients do not consent to disclosure, the lawyer "should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal . . . . Unless review is sought, however, subsection (c) (4) permits the lawyer to comply with the court's order." In other words, although rule 1.6 of the Rules of Professional Conduct permits attorneys to assert nonfrivolous claims to prevent disclosing records that they consider confidential, that rule does not permit attorneys, in perpetuity, to defy the orders of a court after unsuccessfully seeking review of the court's order for disclosure.

Here, the defendant first made multiple claims to prevent disclosing documents for audit. Next, after those objections proved unsuccessful, the defendant still refused to provide the unredacted documents necessary for audit, instead, redacting the documents himself prior to submitting them to the court and, as a result, was suspended from the practice of law. The defendant then timely appealed from the suspension and the orders requiring the disclosure of documents,[16] but this court dismissed that appeal because the defendant failed to file a preliminary statement of issues, even after we provided to him an opportunity to remedy the omission. This court then refused to entertain the defendant's untimely request to open the judgment and vacate the dismissal. Thus, after the prior appeal was dismissed, the Rules of Professional Conduct permitted the defendant to comply with the orders of the court. See Rules of Professional Conduct 1.6 (c) (4), commentary.

The March 16, 2012 order, and the previous orders requiring the defendant to provide documentation necessary for an audit, remained in place after the defendant's previous unsuccessful appeal. The January 28, 2014 order provided that the court would not entertain a motion for reinstatement until an audit was conducted pursuant to the March 16, 2012 order. Consequently, under the circumstances presented in this case, it was not clearly erroneous for the court to order that the defendant comply with its previous orders before it entertained another motion for reinstatement to the practice of law.

B

Finally, the defendant claims that his suspension should have been lifted because he already had served a suspension for a period longer than the six months provided for in the agreement. According to the defendant, the court's denial of his motion for reinstatement

"changed the parties' agreement" by imposing a longer suspension than that specified in the agreement. This claim has no merit.

The Superior Court possess the "inherent authority to regulate attorney conduct and to discipline the members of the bar." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 523, 461 A.2d 938 (1983). "[C]ourts . . . can and ought to be [held responsible] for the fitness of those who enjoy the privileges of the legal profession under their authority and sanction." *In re Peck*, 88 Conn. 447, 451, 91 A. 274 (1914). "An attorney as an officer of the court in the administration of justice, is *continually* accountable to it for the manner in which he exercises the privilege which has been accorded him." (Emphasis added; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 554–55.

As part of his agreement with disciplinary counsel, the defendant consented to "submit[ting] his IOLTA account [records] for monthly audit by the Statewide Grievance Committee . . . ." He also consented to "fully cooperat[ing] with the Statewide Grievance Committee and . . . promptly answer[ing] all questions and provid[ing] all necessary documents." Moreover, the agreement provided, in relevant part, that if the defendant "fail[ed] to comply with one or more of [its] conditions . . . the court shall order that the [defendant] be suspended from the practice of law for six months, and [the defendant] *must be reinstated by motion to the court, subject to such conditions as the court might impose at the time of reinstatement.*" (Emphasis added.)

Here, the defendant refused to provide to the Statewide Grievance Committee the documents necessary for an IOLTA account audit and, as a result, the court imposed a six month suspension. Nonetheless, pursuant to his agreement with disciplinary counsel, if the defendant wished to be reinstated he was "subject to . . . conditions as the court might impose . . . ." The January 28, 2014 order, which provided that "[t]he court will not entertain a motion for reinstatement until an audit is performed," reaffirmed the agreement, wherein the defendant agreed to cooperate with an audit of his IOLTA account. The court's refusal to grant reinstatement until the defendant provided the necessary documents for an IOLTA account audit, thus, did not change the terms of the agreement. After the defendant was suspended for, inter alia, failing to provide a former client with a proper accounting of funds, the court was fully entitled to condition his return to the practice of law on cooperating with an audit of his client trust account. Consequently, it was not clearly erroneous for the court to deny the defendant's motion for reinstatement.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See Practice Book § 2-47.

[2] This is the third appeal in this presentment that the defendant has filed with this court. The first appeal was filed on March 30, 2012, and was dismissed as an interlocutory appeal. See footnote 10 of this opinion. The second appeal was filed on January 30, 2013, and was dismissed for the failure to submit a preliminary statement of issues. See Practice Book § 63-4 (a) (1).

[3] Rules of Professional Conduct 1.15 (a) (5) provides in relevant part: " 'IOLTA account' means an interest—or dividend—bearing account, established by a lawyer or law firm for clients' funds at an eligible institution from which funds may be withdrawn upon request by the depositor without delay. An IOLTA account shall include only client or third person funds, except as permitted by subsection (h) (6) [of this rule]."

[4] In this appeal, the defendant also challenges the court's denial of his motion for stay. The only motion for stay that the defendant filed, however, was in connection with his March 30, 2012 interlocutory appeal. That appeal was dismissed for lack of final judgment. See footnote 10 of this opinion. The defendant never filed a motion for stay in connection with his January 30, 2013 appeal, nor with this appeal. Thus, the defendant's challenge of the court's denial of his motion for stay is not properly before us in this appeal and, therefore, we do not address this claim.

[5] Specifically, disciplinary counsel alleged in the presentment that, after the defendant was awarded attorney's fees arising from his representation of Kruk, the defendant had failed to: "properly account for [Kruk's] recovery according to the terms of the fee agreement . . . provide [Kruk] with a proper accounting of his fees and expenses in connection with [the dispersal of attorney's fees arising from the representation] . . . disperse to [Kruk] the amount to which she was entitled under the terms of the fee agreement in the distribution of the attorney's fees award . . . [and] provide [Kruk's] file to [her new counsel]."

[6] The terms of the agreement were filed with the court through an affidavit by the defendant and a written agreement signed by both parties. The court then issued an order in which the agreement's terms were incorporated.

[7] In the agreement, the defendant admitted that there was "sufficient evidence to prove . . . that [his] conduct violated rule 1.15 (a) (5) (e) of the Rules of Professional Conduct." The same subsection is quoted both in the presentment and in the order enforcing the agreement's terms. This appears to be a scrivener's error because there is no such subsection, and the context plainly refers to the subject matter contained in rule 1.15 (e) of the Rules of Professional Conduct, which provides in relevant part that "upon request by the client . . . [the attorney] shall promptly render a full accounting regarding" funds received in which a client has an interest.

[8] The agreement provided that the documents that the defendant would need to provide included, but were not limited to, "bank statements, cancelled checks, deposit slips, general ledger[s] [and] individual client ledgers, and HUD-1's, settlement statements and invoices relative to all disbursements . . . ."

[9] The court issued two orders on March 16, 2012, that required the defendant to provide the Statewide Grievance Committee documents for audit. One order pertained to the period of November 4, 2011 to December 16, 2011; the other order pertained to the months of December, 2011, and January, 2012.

[10] On March 30, 2012, the defendant appealed from the denial of his January 31, 2012 motion to vacate and the orders requiring that he provide to the Statewide Grievance Committee the documents pertaining to his IOLTA account. Disciplinary counsel moved to dismiss the interlocutory appeal for lack of a final judgment, and this court dismissed that appeal on July 25, 2012.

[11] The defendant stated that he would not provide unredacted documents because, even if his clients' names were redacted through an in camera review, "the identity of the clients would be easily ascertained by anybody auditing the records through the information that they received."

[12] "Nisi orders are orders [that] are conditional and empower the affected party either to avoid an adverse order of the court or to cause an existing adverse order to be set aside or vacated by complying with the specified conditions." (Internal quotation marks omitted.) *State* v. *Miscellaneous Fireworks*, 132 Conn. App. 679, 688, 34 A.3d 992 (2011).

[13] Pursuant to Practice Book § 71-5, the defendant had ten days from the date of the official release of this court's decision, until March 22, 2013, to file a motion to open and vacate the dismissal of the appeal. The defendant

did not file his motion to open and vacate, however, until April 4, 2013. Thus, his motion was untimely.

[14] The defendant erroneously contends that we must review the claims that he previously appealed because the imposition of his suspension was not an appealable final judgment. "A judgment is considered final if the rights of the parties are concluded so that further proceedings cannot affect them . . . ." (Internal quotation marks omitted.) *Stern* v. *Allied Van Lines, Inc.*, 246 Conn. 170, 174, 717 A.2d 195 (1998). Practice Book § 2-47 (a) provides that, after a hearing on the presentment, "the court shall render a judgment dismissing the complaint or imposing discipline . . . ." Thus, the imposition of attorney discipline concludes the rights of the parties concerning a pending presentment, and is considered a final judgment for the purposes of appeal.

Here, the imposition of a six month suspension concluded the parties' rights concerning the presentment. Therefore, the court's January 11, 2013 order suspending the defendant constituted an appealable final judgment. See, e.g., *State* v. *Longo*, 192 Conn. 85, 89, 469 A.2d 1220 (1984) ("[t]he appealable final judgment in a criminal case is ordinarily the imposition of sentence" [internal quotation marks omitted]). The defendant, then, timely appealed that judgment on January 30, 2013.

[15] The defendant had several available options to obtain review of his claims. He could have timely pursued his claims in his prior appeal by complying with Practice Book § 63-4 (a) (1) in the first instance or, after failing to comply with Practice Book § 63-4 (a) (1), he could have complied with the nisi order and, thus, avoided dismissal of his appeal. Additionally, before this court dismissed his appeal, he could have moved to extend the nisi order or, after this court dismissed his appeal, he could have timely filed his motion to open and vacate this court's dismissal and, consequently, potentially could have obtained review of his claims. He did not to take advantage of any of these options.

[16] In the appeal form for his January 30, 2013 appeal, the defendant specifically listed the "order to disclose confidential client information" as an appealable judgment that he was challenging.

————————————————